### Judson C. Goodrich v. City of Detroit.

*Liability of Detroit City for public works.*—Under the charter of Detroit (of 1857) the city corporation has no power to make itself responsible for the price of any public work; and such work can only be paid for by funds actually in the hands of the city treasurer, provided for the specific purpose.

*Case agreed upon : inferences of fact not to be drawn.*—A case agreed upon by the parties, and submitted to the Court for its decision, is not a mere stipulation concerning evidence, from which inferences of fact may be drawn ; but it is equivalent to a finding of facts by a Court, or the special verdict of a jury, in which every fact necessary to a recovery must be expressly found.

Where, therefore, a contractor claimed to recover of the city of Detroit the contract price of a certain public work, on the ground of negligence on the part of the city in collecting the assessment therefor, and a case was agreed upon and submitted to the Court which {only set forth the steps which the city had taken for the collection ; it was held, that the Court had no right, on such a case, to find the fact of negligence from the facts agreed upon and set forth.

*Heard April 14th. Decided April 19th.*

Case agreed upon by the parties, in the Wayne Circuit, as follows :

This is an action of assumpsit. The plaintiffs declare upon the common counts, and claim the sum of $5,000. The defendant pleads the general issue.

The facts of the matter in controversy are the following. In August, 1860, the plaintiffs entered into a contract with the defendant to do all the paving of the city for that year. The plaintiffs performed the contract in a satisfactory manner. The Common Council of said city assessed the taxes to pay for the paving thus done, in the usual manner.

GOODRICH v. CITY OF DETROIT.

William Cook was city collector of said city for the year 1860. He was appointed by the Common Council and gave the required bond to the city, with sureties.

The assessment roll made as prescribed, with a warrant in the usual form, was put by the city into the hands of said Cook.

On this warrant and assessment the said Cook collected the sum of $1,761, which he never paid over to the city treasurer, as provided by law.

The Common Council, in the fall of 1861, appointed a committee to examine into the accounts of the said Cook, then supposed to be a defaulter to the city, and this committee reported, October 1st, 1861, that the said Cook collected the sum mentioned, belonging to the paving fund, for the year 1860, with other sums belonging to other city funds, and recommended that the city sue said Cook and his bondsmen.

This recommendation was adopted by the Common Council, and suit commenced November 13th, 1861, by declaration. To this declaration a demurrer was put in on behalf of the defendants, January 2d, 1862. No further steps had been taken in the said suit up to the time this present suit was commenced.

It is stipulated by and between the said parties, that upon the foregoing facts and following, the said Circuit Court shall determine the questions of difference between them in this cause, and shall render judgment therein, according as the rights of the said parties in law may appear, in the same manner as if the facts aforesaid were proven upon the trial of said issue.

It is further stipulated between the said parties, that the charter and ordinances of the said city of Detroit may be used by either party on the hearing of this cause, without proof, so far as the same shall be admissible, and that portions given below, of the contract for said paving,

between plaintiffs and defendants, may be read as part of the evidence in this cause on the trial.

It is also admitted that the cause above mentioned, against Cook and his sureties, is on the docket, and duly noticed for hearing at the present term of this Court. And that the plaintiffs have demanded the amount due them in the manner required by law and the terms of said contract.

GRAY & O'FLYNN, <em>Attorneys for Defendant.</em><br>WALKER & KENT, <em>Attorneys for Plaintiffs.</em>

The contract referred to in the foregoing is dated August 13th, 1860. The parties of the first part contract to do certain paving for the party of the second part. There are the following clauses.

"Payments for said work will be made from the proceeds of special assessments, made for that purpose upon each block paved, and not otherwise. And it is expressly understood and agreed, by and between the parties to this contract, that the parties of the first part shall not receive or demand payment for said work, until money for the payment of the same shall have been collected by the city collector, or such other person as shall be appointed by the Common Council for that purpose, and actually paid into the city treasury upon the special assessment rolls aforesaid. The said party of the second part undertaking only to use reasonable care and dispatch, in the preparation and collection of said special assessments, and the payment of the money proceeds thereof after collection and upon demand of the said parties of the first part."

On this case the Circuit Court rendered judgment for defendant.

*Walker & Kent,* for plaintiff:

1. The general character of the contract entered into between the city and plaintiffs is clearly set forth in

12 MICH.—S.

*Beard v. The City of Brooklyn*, 31 *Barb.* 143. The liability of the city is special. It promised to pay for the paving, not generally, but only in a particular way. Its duty was to assess, collect, and pay over the taxes raised for the special purpose of paying for the paving done. It was bound to use reasonable care and diligence in doing this work. For the absence of this reasonable care in any of its agents, it is responsible. If responsible at all, if the contract be in any way binding, it must be responsible for its agents, since being a corporation it can act only through agents: — *Story on Agency*, § 16.

2. Cook, the city collector, was the agent of the city in collecting the paving tax.

The city agreed by the terms of the contract to collect the money which was to pay for the paving. It could be collected only through an agent, and the intention must have been to collect it through the city collector, who must therefore be the agent of the city in the matter.

He cannot be considered the agent of the contractors. They had no control over him. He was in no way responsible to them. There was not the slightest legal connection between them.

Neither can the city collector be regarded as an independent public officer, according to *Lorillard v. Town of Monroe*, 11 *N. Y.* 392. He is wholly the creature of the corporation.

In Massachusetts, illegal taxes that have been collected can be recovered of the town or city authorizing the collection, without showing that the money has been paid into the treasury of the corporation: — 1 *Allen*, 319 ; 6 *Gray*, 131 ; 21 *Pick.* 64.

3. If Cook was the agent of the city, then clearly, when he collected the money the city collected it. Payment to an authorized agent is, in all its legal consequences, the same as payment to the principal.

The money thus received was collected to pay the

plaintiffs. The tax was assessed for this purpose. The city had no authority to receive the money, except for this.

The want of payment cannot be excused on the ground that the city has lost the money through the default of the collector. For all misfeasances of its agent, the city is liable:— *Story on Agency*, § 452. They are legally its misfeasances.

Two clauses of the contract will be urged against the views that have been presented.

The first is, "Payments for said work will be made from the proceeds of special assessments made for that purpose, upon each block paved, and not otherwise."

To this, we say, that it is for the proceeds of special assessments made as provided, that we sue. That the city has lost these proceeds through the carelessness of its agent ; that is, through its own carelessness, can be no answer.

The second clause is, "And it is expressly understood and agreed by and between the parties to this contract, that the parties of the first part shall not receive or demand payment for said work, until money for the payment of the same shall have been collected by the city collector, or such other person as shall be appointed by the Common Council for that purpose, and actually paid into the city treasury upon the special assessment rolls aforesaid."

We think the true view of this is: It was inserted merely to fix, as the time when the contractors would become entitled to their pay, the point when the money would, in the ordinary course, be received into the city treasury.

The city would not agree to pay it as soon as collected, because the collector is not obliged to make a return as soon as he has collected any money. His warrant gives

him a certain number of days before he is obliged to report and pay over the amount collected.

The city promised to pay the contractors as soon as the money was received into the treasury, where the proper officer could pay it, just as an administrator may promise to pay money out of an estate when collected.

We do not think it can be successfully maintained that the clause in question should be interpreted to make the contractors liable for the default of the city collector.

That such was not the intention is conclusively shown by the fact, that the city undertook "to use reasonable care and dispatch in the preparation and collection of said special assessment, and the payment of the money proceeds thereof after collection."

The "reasonable care and dispatch" the city promised must in part be that of the collector. He was to collect the money, and if any care was to be used in the collection, it must be his care.

4. If it were admitted that the city is not responsible for Cook's default, it was bound to use reasonable diligence in prosecuting his sureties. This it has not done: — 31 *Barb.* 152; 1 *Metc.* (*Ky.*) 339.

*W. Gray* for the city :

Defendant claims there is no liability under the contract, as the money has not been paid into the treasury. The action can be maintained only for negligence in causing the money to be collected and paid over. Whether there was such negligence or not, is a question of fact passed upon by the Court below, upon the evidence, and the conclusion come to cannot be reviewed. But even if it could be, the finding was correct. The duty of defendant is specially limited to "use reasonable care and dispatch in the preparation and collection of the assessments," etc. All this has been done. But is was claimed

the suit on the collector's bond was not vigorously prose- cuted.

This is no proof of negligence on the part of defend- ant. It could not prosecute the suit. It could only place it in the charge of a suitable and competent attorney, and leave its management and conduct to him. There is no evidence that the attorney was not a suitable one; no evidence that the delay in bringing the cause to a, hearing arose from negligence; no evidence as to the nature of the demurrer or extent of preparation necessary.

The extremest duty of the city was performed by placing the claim in the hands of a proper agent for suit. It could not be expected to attend the courts, or even understand what might or should be done. Its attention was not called to any undue delay by plaintiffs, or any other person.

The attorney of the corporation is elected, not, appoin- ted, to defend and prosecute all suits by or against the corporation. And the corporation are not liable for his neglect:— 1 *Hill*, 545, 550.

*Aliter*, if the duty is imposed absolutely upon the cor- poration as such:—*Ibid*; *Onderdonk v. Brooklyn*, 31 *Barb*. 506-7.

The case of *Beard v. Brooklyn*, 31 *Barb*. 143, is relied upon — but the negligence there complained of was the negligence of the council. No warrant was issued.

The plaintiff in this case declares only upon the com- mon counts. If there is any case against the city, it is one of a special action on the case for negligence:— 23 *Wend*. 458-60; 4 *Denio*, 520-25; 31 *Barb*. 148-9, 153.

We also claim that the proper remedy is by man- damus:— 23 *Wend*. 458.

This is more particularly applicable under the charter of the city of Detroit. All the revenues of the city are divided into separate funds. Street paving fund is one. No contract shall be let, paid, or contracted to be paid

for, save out of the proceeds of the assessment levied for that purpose. Charter, p. 89, § 11.

Under this provision, the city cannot pay till the assessment is collected and paid in. Contracting parties are bound by this, and their only remedy is by mandamus to compel the collection. The Court will not adjudge that the city must do an illegal act, i. e., pay this out of some other fund. The general fund can not be touched to pay what is provided for by a special fund.

CAMPBELL J. :

This case comes up for the review of a judgment rendered by the Wayne Circuit Court, upon an agreed statement of facts.

Plaintiffs agreed with the city of Detroit to do certain paving. The contract contained the following clauses : " Payments for said work will be made from the proceeds of special assessments, made for that purpose upon each block paved, and not otherwise. And it is expressly understood and agreed, by and between the parties to this contract, that the parties of the first part shall not receive or demand payment for said work, until money for the payment of the same *shall have been collected by the city collector*, or such other person as shall be appointed by the Common Council for that purpose, and *actually paid into the city treasury* upon the special assessment rolls aforesaid. The said party of the second part undertakes *only to use reasonable care and dispatch*, in the preparation and collection of said special assessments, and the payment of the money proceeds thereof after collection, and upon demand of the said parties of the first part."

Assessments were duly made, and placed in the hands of the Collector, who collected $1,761.43, and failed to pay it over. October 1st, 1861, a committee of the council reported him as a defaulter, and suit was brought on his bonds November 13th, 1861. A demurrer was put in to

the declaration January 2d, 1862. No further steps had been taken when the present suit was commenced, May, 1863.

The first question that arises, is, whether the city is liable directly on the contract, the money having been received by the collector.

The charter of the city provides that no public work shall be contracted for or commenced until an assessment has been levied to defray the expense, and no such work shall be paid or contracted to be paid for, except out of the proceeds of the tax or assessment thus levied. *P.* 89, § 11, *City Charter*. The treasurer is required to have custody of all moneys, and keep each fund separate, and pay no warrant against any fund unless he has money belonging to it. And moneys can only be paid upon a warrant specifying the particular fund on which it is drawn. *P.* 28, § 10.

It is manifest from these, and other clauses of a similar purport, that the city corporation has no power to make itself responsible for the price of any public work. Such work can only be paid for by funds actually in the hands of the city treasurer, provided for the specific purpose. The contract recognizes this, and expressly provides that the contractors shall receive no payment until the money shall not only have been collected, but actually paid into the treasury. And it further provides, that the city shall only be bound to use reasonable care and dispatch, in the collection and payment. The contractors, in other words, recognizing the ordinary method provided by law for raising the fund, agree to look to that, and to that only. We are clearly of opinion that the city was not, under the agreement, bound to account for the money, until placed in the hands of the treasurer.

But it is claimed that there is a liability for neglecting to enforce with diligence the official bond of the collector, to compel a restoration of the money received

by him and not accounted for. Waiving the question whether, under the common counts in assumpsit, such a cause of action can be supported, and the further question when mandamus will lie, we think no such neglect is made out. The case agreed upon finds that the city commenced suit, that the declaration was demurred to, and that no further steps have been taken. As the law requires suits to be under the charge of certain officers designated, there can be no negligence in putting the case in their hands. How far the city could then go in expediting matters, or in remedying delays in the course of the suit, is not a question of law, but must depend upon some showing; and if there has been any default or neglect, it must be agreed upon, or else proven by evidence. The case before us is one in which the parties, waiving the production of any evidence, have declared what facts are to be assumed as true. No fact not set forth in the case can be thus taken. It was claimed on the argument that this agreed case is open to any inferences of fact which might be allowed to be drawn from evidence, and that negligence might be so inferred. We are not prepared to hold that, from the simple facts before us, if shown by proof in the usual way, any such inference would be justifiable. But the point is not material, for we are of opinion that such an agreed case is equivalent to a finding of facts by a court, or the special verdict of a jury, in which every fact necessary to a recovery must be expressly found. It could never have been the intent of the statute to provide expressly for a mere stipulation concerning evidence, which should allow the Court to draw inferences from inconclusive facts, without the power of removing doubts by further proof. Still less could it have designed to forbid a jury — (which is the most appropriate body to draw inferences of fact)—from determining what facts are to be inferred from the proof, when the right of trial by jury has been so jealously preserved. The

refusal of a jury, and the provisions requiring the Circuit Court to give judgment on the case agreed upon, and the provisions allowing the Supreme Court, without any assignment of error, to correct any alleged errors in the judgment below, all point to the same conclusion, and negative the idea that the facts agreed upon can be treated in any other way than as a special finding. See *Comp. L.* §§ 3421, 4346.

We think the judgment below should be affirmed, with costs.

MANNING and CHRISTIANCY JJ. concurred.

MARTIN CH. J. did not sit in this case.