## The Second National Bank of Lansing v. The City of Lansing.

*Improvements: Liability of city: Assessments.* Improvements in the city of Lansing, for which special assessments are authorized, are not chargeable on the city as ordinary corporate debts, and there is no liability to pay for them except through assessments made for that specific purpose.

*Orders on special fund: Remedy.* Where there is no money in the specific fund to pay orders against it, a suit will not lie on the orders, but the remedy must be by proceedings for assessments to supply the deficiency.

*Heard July 6. Decided July 9.*

Error to Ingham Circuit.

*S. F. Seager* and *C. I. Walker*, for plaintiff in error.

*Dart & Wiley*, for defendant in error.

CAMPBELL, J.

Suit was brought by plaintiff against defendant, to recover the amount of an order for one thousand dollars, drawn in favor of John Shine or bearer, on the city treasurer, by order of the common council, signed by the clerk, countersigned by the auditor, and directed to be paid "out of any moneys in your hands belonging to the Michigan avenue grade fund, for grading."

The case shows there has been no money in that fund to meet the order since it was given, and the principal question presented is, whether the order created a general liability which was enforceable by suit, and payable without regard to particular funds, or whether the resort must be confined to funds raised to meet the expense of the improvement referred to.

The charter of Lansing allows the city to make such improvements, and leaves it to the discretion of the council whether or not they shall be paid for out of special

assessments on property benefited.—*Title 6, § 9.* In case too much is collected it is to be refunded, and in case too little, a further assessment is allowed on the same, or a larger, district.—§§ *18, 19.*

In the present case the city determined to raise the money by special assessment; and the delay has been caused by legal proceedings impeding the collection.

When not paid for by special assessment, no improvements can be made which, with the other city expenditures, will require a liability of more than one per cent. on the assessed valuation of the city, to be incurred by borrowing or otherwise, and any such debt is required to be paid out of the taxes of the year. And money borrowed is to be " applied to the purposes for which the same was borrowed, and for no other purpose whatever."

There is, therefore, no unlimited power to make improvements at the public expense. The power to make them by special assessment is broader, and allows a greater expenditure, than when the work is done as a city charge. The case does not show whether or no this work could have been done without exceeding the limit prescribed. It was not attempted as a general improvement, and no power is given under the charter to borrow money for other improvements. The paper sued on, purports to be an order on the treasury, for work on a specific improvement. As the charter defines precisely how such orders shall be drawn, we are only required to examine into their effect. Except as an order, there is nothing in the charter which could give the paper any validity whatever.

The power to create debts is too closely guarded to allow negotiable securities to be issued for any but defined purposes, if at all. But as this instrument is one easily identified under the charter, its character is not left in doubt.

This order purports, on its face, to be issued under a resolution of the common council, of even date. The charter (*Title 5*, § *16*) requires that no money (except school money) shall be drawn from the treasury, unless "previously appropriated to the purpose for which it shall have been drawn;" and that "all ordinances, resolutions, and orders directing the payment of money, shall specify the object and purposes of such payment, and the fund from which it shall be paid, which shall be certified by the clerk, and countersigned by the auditor, before the same shall be paid by the treasurer."

By *title 4*, § *25*, the auditor is required to countersign orders for money, only "after having ascertained from the minutes that it has been appropriated by the common council." By *section 6*, of the same title, the clerk is required, in drawing the warrant, to specify "in such order the purpose of such appropriation, and the fund from which it shall be paid." By *section 10* the treasurer is required to make a monthly exhibit, "showing what appropriations and payments have been made out of each of the several funds of said city since his preceding report, and of the state of each of said funds."

The order in question would be of no validity whatever, if it had not shown on its face a compliance with the sections of the charter above referred to. And it is impossible to regard provisions so uniform and positive in their tenor, as formal, and not of substantial importance. The law requiring all this particularity would be useless if the funds provided for were not to be regarded as separate and independent funds, not to be confounded or blended.

Whether raised by general or by local assessment, the fund for improving the street in question could be used for no other purpose. If excessive, as already seen, the excess was to be refunded on the assessments. If deficient, it was

25 MICH.—27.

to be supplied by new assessment.    There is nothing in the charter authorizing such deficiencies to be charged over to any other fund.    And any attempt to do indirectly, what is not allowed to be done directly, would frustrate the evident policy of the charter.    It would be absurd to confine the appropriation of money, and the drawing of orders, to specific funds, if on non-payment out of those moneys, the city could be made liable by suit to make payment out of other funds.  The only rule which can be made consistent is, that the holder of such an order must, first and last, be confined to a resort against the fund mentioned in the order.

If the fund is supplied, payment can be compelled directly, by *mandamus.*  If it is not supplied, and if there are means which could lawfully be resorted to for its replenishment, the fault lies in neglecting to replenish it, and the remedy must have regard to that failure.    But there can be no legal occasion or right to sue the city on the orders, as a city charge.

In the case of *Goodrich v. Detroit, 12 Mich. R., 279,* the charter of the city of Detroit was held to prohibit suit against the city to recover such claims.    The charter of Lansing, although not containing the same full and express provisions, contains such clauses as amount to the same thing.   We can see nothing which would justify a resort for payment to any thing but the fund on which the order was drawn.    Provisions like those cited cannot with any propriety be regarded as merely directory.    Their manifest purpose is one which has been very generally followed in recent charters, to secure a rigid responsibility in public officers, and to prevent cities from being involved in debt without at all times knowing its extent and its origin, as well as to save all citizens from being compelled to contribute to pay for improvements that concern their neigh-

bors more than themselves. This well defined policy is not unjust, and we cannot fail to see that the charter of Lansing adopts and enforces it.

The other questions in the case become unimportant, as upon the facts found, there can be no recovery.

The judgment below was correct and must be affirmed, with costs.

COOLEY and GRAVES, JJ., concurred.

CHRISTIANCY, CH. J., did not sit in this case.