## Case No. 1,663.

### BORO et al. v. PHILLIPS COUNTY.

[4 Dill. 216;[1] 6 Cent. Law J. 409.]

Circuit Court, E. D. Arkansas. Feb., 1878.

CONSTITUTIONAL LAW—SPECIAL ASSESSMENT—LIABILITIES OF COUNTIES AND DISTRICTS — LEVEE TAX—LEVEE BONDS.

1. A state may impose special assessments on districts for the purpose of building levees, etc., by virtue of its police power; such an assessment is not in conflict with the constitutional provision requiring equal and uniform valuation of all property for purposes of taxation.

2. The general rule of law that "where one takes a benefit from the result of another's labor, he is bound to pay for the same," does not, as against the county, apply to cases where the benefit of the work is immediately to the adjacent property, and only incidental to the county at large.

3. When the county court merely acts as an agent for a district, and by law it is made the duty of the county court to assess a tax on the lands of the levee district to pay for the work,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

upon a failure or refusal on the part of the county court to discharge its duty in the premises, mandamus is the proper remedy, but such failure or refusal will not make the county liable to a general judgment for the obligations of the district.

[Cited in Aylesworth v. Gratiot Co., 43 Fed. 352.]

4. The county being divided into several levee districts, each of which is to pay its own obligations for work done within the district, the obligations, although made payable by the levee treasurer of the county, are payable only out of the funds of the district in which the work was done, and cannot be made the foundation of an action against the county for a money judgment.

[Cited in Aylesworth v. Gratiot Co., 43 Fed. 352.]

At law. An act of the general assembly of this state, approved February 16th, 1859 [Laws Ark. p. 154, § 1], provided, among other things: That the county courts of the counties of Desha and Phillips should divide the overflowed lands in each of said counties into not less than four nor more than seven levee districts; that it should appoint for each levee district three freeholders, residents of the district for which they were appointed, whose duty it was to report to the county clerk a list of all lands in their districts, respectively, subject to overflow. For each levee district one levee inspector was, in the first instance, to be appointed by the county court, and afterwards to be elected by the qualified voters of the district, who was required to give bond to the state of Arkansas, for the use and benefit of the levee district for which he was appointed. The levee inspector for each district assessed the lands therein for levee purposes, the act fixing the minimum value of the land for this purpose at $10 per acre, and returned his assessment roll to the county clerk, whose duty it was to enter the same on the tax book, and to extend the levee tax against the same at the rate fixed by the county court, which could not be less than one-fourth of one nor more than two per cent annually. The sheriff of the county collected the taxes thus assessed and levied, and paid the same over to the "levee treasurer of the county," who, in the first instance, was appointed by the county court, and afterwards elected by the qualified voters of the levee districts, whose duty it was to receive and safely keep the levee funds of each levee district, and pay the same out on the order or warrant of the levee inspectors, drawn against the levee fund of their districts respectively. The levee inspector for each district was invested with large powers, and authorized to make contracts for building and repairing the levees in his district, and payment for such work belonging to his district was to be made out of the fund arising from the levee tax assessed and collected for such district in the manner indicated, and the inspector was authorized, when money was due for levee work in his district, to draw his war-

rant upon the treasurer for the amount, which the act declared "might be in the following terms, to-wit:

"State of Arkansas, County of ——: The levee treasurer of —— county will pay to ——— or order the sum of ——— dollars, out of any money in the treasury belonging to levee district No ——, this —— day of ——, 18—. A. B. C., Levee Inspector of Levee District No. ——."

By an act approved January 15th, 1861 [Laws Ark. p. 221], the first act was amended in several respects, not material to notice, and the following provisions were enacted relating to the levee warrants or scrip theretofore issued by the levee inspectors of the several districts: "Sec. 19. That all the levee bonds, scrip, or drafts issued by the several levee inspectors of said counties prior to the taking effect of this act, shall be presented to the county clerk of the county in which such bonds, scrip, or drafts were issued on or before the 1st day of January, 1862, whose duty it shall be to issue to the holders thereof the same amount of bonds, scrip, or drafts, bearing the same rate of interest, which interest shall run from the date the scrip, bond, or draft bears interest before renewal, and each bond, scrip, or draft shall be confined to the county and district in which it was issued and out of the fund of which the same is to be paid." It was further provided that the county clerk shall keep a register of the scrip presented to him for renewal, showing the date, number, amount, to whom payable, what inspector issued the same, and the number of the district out of the fund of which the same is payable, and shall file the same in his office for the inspection of the county court; and it was provided that levee scrip should be received in payment of levee taxes in the levee district out of the funds of which the same is made payable, and that no lands in the county shall be taxed for levee purposes that were not taxable for that purpose under the first act, i. e., lands subject to overflow, and included in a levee district. Under the provisions of section 19 of the last act, above quoted, the holders presented to the county clerk of the county levee orders or warrants, previously issued by the levee inspectors of the several levee districts in the county, and for each bond, scrip, or draft so presented the clerk issued a renewal bond or draft. A further act, approved April 8th, 1869 [Laws Ark.], gives to the holders of levee scrip or bonds, issued under the previous acts, one year in which to present the same to the county court for payment, filed and numbered, in order to enable the court to estimate the necessary amount to be levied each year upon the land situated in each levee district, as laid off and designated by each of said county courts, and it was made the duty of the county court to levy an annual tax upon all the lands in each of the districts to pay the levee bonds and scrip of said district respectively. The levee bonds or scrip in suit were presented to the county court and filed and registered as required by this act. The county court refused or neglected to levy a tax on the lands in the levee districts to pay scrip or bonds, as required by the act of 1869, and no such tax has been assessed or collected since 1862, and no moneys arising from such a tax are now or ever have been in the county treasury or used or appropriated by the county for general county purposes, but all moneys arising from the levee tax on lands, in these districts, were paid out by the levee treasurer on levee bonds, or scrip issued for building and repairing levees in the several districts. The acts of February 16th, 1859, and January 15th, 1861, were repealed by the act of March 23d, 1871 [Laws Ark. p. 89, § 14]. The plaintiffs are holders of a large amount of the renewal bonds issued by the county clerk, under section 19 of the act of January 15th, 1861, and seek by this action to recover a general judgment against the county thereon.

W. H. Hiddell, for plaintiff.

Tappan & Horner and Palmer & Nichols, for defendant.

CALDWELL, District Judge. In seasons of high water, a considerable portion of the finest cotton lands of the south, bordering on the Mississippi and its tributaries are subject to overflow. The protection of these lands from inundation by the construction of levees was early found to be practicable and necessary to the growth and prosperity of the rich alluvial districts of the southern states. Coeval with organized governments in these states, laws were passed looking to the reclamation of these lands by the construction of levees, and providing a mode in which the money should be raised to pay the same. The usual mode adopted for this purpose was to divide the overflowed lands into convenient districts, appoint local officers therefor, to determine the location of levees, and to contract, on behalf of the district, for their construction and repair, and providing for a special assessment on the lands benefited by the construction of the levees to pay the cost of the same.

The authority of the state to impose a special assessment for this purpose, on the lands benefited, is found in the police power. A special assessment for such a purpose is not a tax, in the strict legal sense of that word, and hence it has been uniformly held that the usual constitutional provisions requiring the burdens of taxation to be equally distributed, and requiring an equal and uniform valuation of all property for purposes of taxation, have relation to taxation for general state and county purposes, and are not limitations on the exercise of the police power, and do not inhibit special local assessments, when the fund raised is expended for the improvement of the property tax-

ed. McGehee v. Mathis, 21 Ark. 40; Cooley, Tax'n, pp. 401, 402, 427, and authorities cited.

The policy of imposing the cost of the construction and repairs of the levees on the lands benefited thereby, was adopted by the legislature in reference to the levees in Desha and Phillips counties. The acts are explicit on that subject. By their terms these l nds subject to overflow are divided into districts. Each district has its own officers to contract on behalf of the district for the construction of levees. Provision is made for raising a fund to pay for all levee work by an assessment on the lands benefited, and it is expressly provided that other lands and property in the county shall not be assessed or taxed for this purpose.

The acts in question adopted a scheme for the construction of levees and raising a fund to pay therefor quite independent of the action of the county proper in its corporate capacity. The contracts for levee work were to be made by the levee inspector of the district, and the work was to be paid for out of the levee fund arising from the assessment made on the lands in the levee district. The warrant or order for such payment was drawn by the levee inspector of the district on the levee treasurer of the county, an officer elected by the qualified voters of the levee districts of the county, and not by the qualified voters of the whole county, and was payable out of money in his hands belonging to the levee district in which the work was done. The levees that might be built were for the exclusive benefit and advantage of the land reclaimed from overflow, and for this reason the acts in question made provision for the whole cost of the construction upon the lands thus benefited. If this scheme proved inadequate for raising the funds, that does not make the county liable. The act does not provide that the county shall be liable in such an event, or in any event, and the general rule "that when one takes a benefit from the result of another's labor, he is bound to pay for the same," does not apply to cases of this kind, where the benefit arising from the work or improvement is immediately to the adjacent property and only incidentally to the county at large. Argenti v. San Francisco, 16 Cal. 255, opinion by Field, C. J. The acts impose no liability on the county. Neither the county court nor any officer of the county had any authority or power to enter into a contract, or make or create an obligation binding on the county in relation to the work. It was suggested in the argument that a sufficient authority for the county court to bind the county in such case was found in section 9, art. 6, of the constitution of 1836, in force at the date of the transaction, which declares "the county court shall have jurisdiction in every other case necessary to the internal improvements and local concerns of the county."

In 1857 an act was passed providing for the construction of levees in Chicot county, identical in many of its provisions with the acts here in question, and in McGehee v. Mathis, supra, the supreme court say: "Nor are the levees provided for by act of January 7th, 1857 [Laws Ark.], an 'internal improvement and local concern,' within the meaning of that clause of the constitution above cited. These terms, as there employed, relate to public internal improvements, and local concerns for general county purposes, which appertain to the county at large as a body politic, and not to improvements for special local purposes, where the funds expended in making the improvements are raised by assessments imposed only on the particular property improved." But in this case the county court has not attempted to make the cost of these levees a charge upon the county, and, if it had done so, its act would have been a nullity. By the terms of these acts, there were but two parties to the contracts to build the contemplated levees—the levee inspector of the district, acting for and in behalf of his district, and the contractor.

The act pointed out specifically the source from whence the fund was to be obtained to pay for such work, and limited the payment to that fund, and the parties must be presumed to have contracted in reference to these provisions of the act. The county was no party to the contract, and no contract or obligation entered into by a district levee inspector could bind the county. What the county court had to do in the premises was to levy such rate of tax within the limits fixed by the act, on the lands in each district as listed, assessed, and reported by the levee inspector thereof, as might appear to be necessary to meet the obligations of the district. The county court was merely resorted to as a convenient and suitable agent for these purposes. If the county court failed or refused to discharge its duty, it might have been compelled by mandamus, or other appropriate proceedings at the suit of an aggrieved party, to perform its duty, but the failure of the county court to discharge any or all of the duties imposed on it by these acts would not render the county liable for the debts of the levee districts. If the money arising from the local assessments to pay the debts of the levee districts had gone into the county treasury and been used or appropriated by her for general county purposes, a different question would be presented; but the fact is conceded to be otherwise. The bonds or certificates sued on were issued by the county clerk, and were intended, doubtless, to conform to the requirements of section 19 of the act of January 15th, 1861; if not issued by authority of that section, they are of no validity, because no other authority for their issue can be found.

There is an obvious error in the preamble to these renewal bonds, the clerk reciting

that they are issued under and by virtue of section 11 of the act of February 16th, 1859, when it is apparent that they must have been issued under section 19 of the act of January 15th, 1861. That section expressly provides that each renewal draft issued by the clerk "should be confined to the county and district in which it was issued, and out of the fund of which the same is (to be) paid." They were intended to be, and declared to be, "renewals" of the drafts drawn by the levee inspectors of the several levee districts, and, like them, they were made payable in terms out of money in the treasury belonging to the levee district in which the work was done. The bonds in suit declare the "levee treasurer" will pay the sum named therein "in part payment of work done according to contract within and for levee district No. ——." They are not in terms payable out of the funds of any particular district, though the district in which the work was done, on account of which the bond is issued, is mentioned, and inasmuch as the act provides the work done in a district shall be paid for out of the funds of that district, it is probable the legal effect of these bonds is the same as if they had been made payable in terms out of the funds of the district liable for their payment. If this is not so, then the bonds on their face are void for non-compliance with the law, and the levee treasurer, though in possession of funds to do so, would not be authorized to pay them. Martin v. San Francisco, 16 Cal. 285; Bayerque v. San Francisco [Case No. 1,137]. And if they are treated as valid instruments, properly issued under the law, then they are payable only out of the funds of the levee district in which the work was done, and cannot be made the foundation of an action against the county. Dill. Mun. Corp. § 413; Lake v. Trustees of Williamsburgh, 4 Denio, 520; McCullough v. Mayor, etc., of Brooklyn, 23 Wend. 458; Pettis Co. v. Kingsbury, 17 Mo. 479; Campbell v. Polk Co., 49 Mo. 214.

This act of 1869 removed or postponed the bar of the statute of limitations, changed the mode of assessing the lands in the levee districts for levee purposes, and re-enacted with some emphasis the provisions of the act of 1859, relating to the duty of the county court to levy the required tax on the lands in the several levee districts to pay the debts of those districts respectively. This act is not repugnant to the constitution in any of its provisions, but it does not impose the liabilities of the levee district on the county. Judgment for defendant.