### AYLESWORTH v. GRATIOT COUNTY.

*(Circuit Court, E. D. Michigan. November 30, 1889.)*

1. COUNTIES—ACTION ON DRAIN WARRANTS—JURISDICTION.
   An action lies in the federal court upon drain orders drawn by a county drain commissioner upon a county treasurer, though the orders themselves create no debt against the county, and the sole duty of the county officers is to assess and collect the cost of constructing the drain from the owners of property benefited by it. In such case the judgment is special, and is enforceable only by *mandamus* to compel the collection of the tax.

2. SAME—ACTION BY ASSIGNEE.
   Such orders are so far negotiable that suit may be brought upon them by the holder, though the court would have no jurisdiction of an action brought by the assignor of such holder.

3. SAME—EVIDENCE.
   Such orders are *prima facie* valid, and plaintiff is not bound to prove the regularity of the proceedings for the assessment and collection of the tax.

4. JUDGMENT—RES ADJUDICATA.
   A decision of the supreme court of the state denying relief to a prior holder of such orders is not *res adjudicata*.

*(Syllabus by the Court.)*

At Law.

This was an action upon certain orders originally issued to one John Scriven for work done and materials furnished in the construction of two drains in the defendant county, such drains being located in the townships of Newark, New Haven, and Arcada, and no other. These orders were issued in pursuance of Act 43, Laws 1869, as amended by Act No. 169, Laws 1871. To the special count in the declaration were also attached the common counts, together with copies of these orders, which were signed by the drain commissioner and countersigned by the chairman and clerk of the board of supervisors. An indorsement upon such orders shows that they were presented for payment to the county treasurer about the time they were issued, and that on the 31st of March, 1883, all but one of them were again presented, and a payment made thereon.

The following is a sample copy of the orders, with their indorsements.

"No. 257.                    ITHACA, MICHIGAN, Nov. 7th, 1872.

"*County Treasurer, Gratiot County:* Pay to John Scriven or bearer three hundred and seventy-six dollars out of the drain tax assessed in the township of Arcada for construction of Newark and Arcada ditch in said township. Act number 169, Laws 1871.                    D. W. ATTENBURG,
                         "Drain Commissioner of Gratiot County.

   "Countersigned:  H. T. BARNABY.
                "Chairman Board of Supervisors.
         "N. CHURCH, Clerk."

Indorsed

"Presented for payment this 16th day of Nov., 1872.
              "W. S. TURK, Treasurer Gratiot County, Michigan.

"Paid March 31st, 1883, on the within order, $148.46.
                "S. B. HAVERLO, County Treasurer.

   "Received March 31st, 1883, of said county treasurer the above $148.46 as the agent of Eliza W. Brownell, of Niagara county, New York.
      [Signed]                         "W. E. WINTON."

The defendant pleaded the general issue, and gave notice of the following defenses: *First*, the statute of limitations; *second*, that the orders were payable out of a special fund, which was not supplied with funds with which to pay them on account of the action of the party through whom plaintiff claimed title; *third*, res *adjudicata*.

These drains were constructed by John Scriven under contract—*First*, with the drain commissioner of Gratiot county; *second*, under contract with E. W. Kellogg, special commissioner by Act 445, Laws 1871, which provided that certain state lands in Gratiot county might be used in the payment for certain drains located in said township. These lands were benefited by the construction of the drains, and were assessed for the same. Before the assessment was reported to the commissioner of the land-office, Scriven made his selection of lands in payment of his contract with Kellogg. The commissioner of the land-office would not issue patents to Scriven until these taxes were paid. In 1879, Scriven brought a suit in chancery in the circuit court for Gratiot county to set aside these taxes, and compel the commissioner to issue patents, and had a decree in his favor as prayed. This decree was not appealed from, and patents were issued. By this means the special fund from which these orders were to be paid was diminished by about $2,000. Had those taxes been collected by the land commissioner, and turned over to the county treasurer, the orders would all have been paid.

In 1881, one Eliza W. Brownell, who claimed to have received these orders from Scriven, petitioned the supreme court of Michigan for a *mandamus* against the board of supervisors compelling them to pay these orders. Her petition was denied. 49 Mich. 414, 13 N. W. Rep. 798.

*Marston & Jerome*, for plaintiff.

*F. H. Canfield* and *C. J. Willett*, for defendant.

BROWN, J. While this is nominally an action to recover the amount of these orders from the county, the real object is to procure the issue of

a writ of *mandamus* for the collection of this tax from the property benefited by the drain. Several defenses are interposed, which I will proceed to consider in their order.

1. That the orders created no obligation against the county. If by this it is intended merely to urge that the orders created no debt against the county which, as a municipal corporation, it is bound to pay, the position taken is correct. It is well settled that, where public improvements are by law to be made at the expense of the adjoining property, no charge against the corporation is created, and its only duty is to take the necessary and legal steps to collect the assessment, and to pay it to the parties justly entitled thereto. Thus it was held in the case of *Lake* v. *Trustees*, 4 Denio, 520, in an action upon an order given by the president of a village upon the treasurer to pay the contractor a certain sum out of particular funds, that the corporation was the agent or instrument of the land-holder having an interest in the matter, to ascertain how much each one ought to pay and another to receive, and collect the money from those who were benefited, and see that it was properly applied to the particular object, and that this was the extent of its duty. It was held that the plaintiff could not recover generally against the corporation as for a debt, and it was intimated that the plaintiff had a remedy by *mandamus*, or by an action on the case against the trustees for neglect of duty. This is also the intimation of the supreme court in the case of *Ogden* v. *County of Daviess*, 102 U. S. 634. And I believe that the authorities are uniform to the effect that no action will lie against the county upon these obligations as for a debt chargeable against it. *Goodrich* v. *Detroit*, 12 Mich. 279; *Bank* v. *Lansing*, 25 Mich. 207 The proper remedy in this class of cases in the state courts is by writ of *mandamus* to compel the assessment and collection of the tax by the officers charged with that duty, and payment of the same to the party entitled thereto.

As a petition for a writ of *mandamus* in the federal court will not be entertained as an original proceeding, it was at one time supposed that no action of any kind would lie against a municipality. In the case of *Boro* v. *Phillips Co.*, 4 Dill. 216, it was held that the failure or refusal of the county to discharge its duty in such cases did not make it liable to a general judgment for the obligations of the particular district, and could not be made the foundation of an action against the county for a money judgment. This may be entirely true, and yet it does not follow that there is no remedy in the federal court where the plaintiff is entitled to sue therein by reason of his citizenship. The general rule is believed to be without exception that, where the plaintiff is otherwise entitled to relief in this court, he will not be debarred therefrom by reason of the fact that his remedy in the state court, upon the same cause of action, would be of a character which we are not entitled to administer here. Hence it was held by Judge DILLON, in the case of *Jordan* v. *Cass Co.*, 3 Dill. 185, that the holder of county bonds issued by a county court on behalf of a township voting aid to a railway might sue the county in the federal court, and recover judgment thereon, although

such judgment could not be enforced against the county or its property, or the tax-payers of the county at large, but only by *mandamus* to the county court to compel the levy and collection of the special tax, according to the statute. This is believed to be the earliest case upon the subject, and the opinion is a very interesting and instructive one. This case was approved in *County of Cass* v. *Johnson*, 95 U. S. 360, and was applied in the case of *Davenport* v. *County of Dodge*, 105 U. S. 237, to bonds issued to county commissioners on behalf of a precinct which had no corporate existence, and could not contract or be contracted with. The court considered the bonds in this case as special bonds, which the county commissioners were to issue for the precinct, and that they were in legal effect the special bonds of the county, payable out of a special fund, to be raised in a special way. Similar ruling was made in the case of *Blair* v. *Cuming Co.*, 111 U. S. 363, 4 Sup. Ct. Rep. 449. This case differs from the others in the fact that the bonds contained no promise by the county to pay, but a promise by a precinct, which had no separate corporate existence. Notwithstanding this, the county was held liable to the performance of the obligation.

As the authority of the drain commissioner to draw these orders is unquestioned, it is evident that there must be a remedy in favor of the payee or holder against some one for payment. It is an axiom of the law that for every wrong there is a remedy. It is evident, however, there can be no remedy against the commissioner, as he has no corporate powers, and as he is required by law to draw these orders upon the county treasurer in behalf of the contractor, but has no power to enforce the collection of the tax, or to provide in any other way for their payment. It is equally clear that the county treasurer is not bound to pay them unless he has the funds, and that no action will lie against him unless he refuses to disburse moneys actually in his hands for that purpose. An examination of the statute, we think, demonstrates that there is an obligation on the supervisors representing the county that they can only discharge by an assessment and collection of the tax. By section 1 of the drain law of 1869, as amended in 1871, the board of supervisors of each county is authorized to appoint one county drain commissioner, who is required by section 3 to execute the duties of his office and the resolutions and orders of the board of supervisors. He is bound to keep a full record of his official acts in a book to be furnished by the county, to draw all proper orders on each drain fund, to report to the board of supervisors his action in relation to each drain, and file the same with the clerk. Orders drawn by him must be countersigned by the chairman and clerk of the board. By section 4, on application to him by 10 or more owners of land in each township, he is required to make examination by surveys, and to determine the route of any drain they may require, and may have the assistance (section 6) of a court of record for the appointment of special commissioners to examine the property, and the necessity for the construction of such drain. By section 11, he shall make a full report of all his doings, and present the same to the board of supervisors at their next annual meeting. This board shall charge

v.43f.no.5—23

the apportioned sum against each township, and direct the supervisor of each township to levy the same upon the several parcels of land benefited by the drain.   By section 12 the county treasurer is charged with the duty of returning all lands upon which a tax shall be levied and not paid to the auditor general, and the same shall be advertised and sold, and, if bid off to the state, the state treasurer shall pay over to the county treasurer the amount of the taxes.   By section 15, whenever such tax shall be set aside by any court of competent jurisdiction, it shall be lawful for the supervisor to reassess such tax on the same land where such drain has been made, and, in case of any mistake or misapportionment of taxes, the board of supervisors, upon the recommendation of the drain commissioner, or upon a review before them had by appeal from the action of the drain commissioner, may reassess upon the various lands or portions of lands such amount of drainage taxes as may be necessary to correct such mistake or misapportionment.   By section 17, no money shall be paid by any county treasurer except on a warrant drawn by the commissioner and countersigned by the chairman and clerk of the board of supervisors, and then only from the particular fund provided for each ditch.   If there be no funds in his hands, the county treasurer must indorse the date of the presentation of the orders with his signature thereto, and his orders shall draw interest from and after such presentation and indorsement.   Section 19.   By section 24 the board of supervisors has full power and authority to control the action of the commissioner, and may order reassessment of the drain tax, or any portion thereof, to correct errors, and may make any other order in relation to such ditches or drains as may be necessary.   By section 33 the most ample powers are conferred upon courts to make such orders as shall be just and equitable, and may order such tax to remain on the roll for collection, or order the same to be levied, or may enjoin the same, or may order the whole, or such part thereof as may be just and equitable, to be refunded.

It is evident that under this act most ample powers are conferred on the board of supervisors with regard to the assessment and collection of these taxes, and in case of any dereliction of duties on their part there ought to be a remedy against the corporation, of which they are the authorized expression and agent.   As before observed, the proper remedy in the state court is by writ of *mandamus*.   As this court is incompetent, in the first instance, to afford this relief, we think an action may be brought against the county, and the collection of the judgment enforced by the same process of *mandamus* that would be resorted to if the proceedings had been instituted in the state court.

My only doubt in this connection is whether the declaration should not count upon the failure of the board of supervisors to take the proper proceedings for the levy and collection of this tax.   The state courts have repeatedly held that no action as for a debt will lie against the municipality upon these warrants, (*Goodrich* v. *Detroit*, 12 Mich. 279; *Bank* v. *Lansing*, 25 Mich. 207; *Whalen* v. *City of La Crosse*, 16 Wis. 271; *Finney* v. *City of Oshkosh*, 18 Wis. 209; *Fletcher* v. *City of Oshkosh*, Id. 232; *Mor-*

*gan* v. *City of Dubuque,* 28 Iowa, 575;) but may not an obligation to pay these orders arise from a failure to collect them from the land?

2. The second defense in this case is that these orders are not negotiable, and hence that plaintiff is not authorized to bring suit upon the same in this court.  By the act of 1887 this court cannot take cognizance of any suit, except upon foreign bills of exchange to recover the contents of any promissory note or other chose in action in favor of any assignee or of any subsequent holder, if such instrument be payable to bearer, and be not made by any corporation unless such suit might have been prosecuted in such court, to recover said contents, if no assignment or transfer had been made.  There is no doubt that under the case of *Mayor* v. *Ray,* 19 Wall. 468, instruments of this description may be transferred from hand to hand, but that they are not commercial paper, in the sense of creating an absolute obligation to pay for them, free from legal and equitable defenses, and that the holder takes them subject to such defenses.

We understand, however, that they are negotiable instruments in the sense that suit may be brought upon them by the holder, though they have no validity unless issued for the purpose authorized by law, and that, while *prima facie* valid, they may be shown to have been irregularly or fraudulently issued.  *District of Columbia* v. *Cornell,* 130 U. S. 655, 9 Sup. Ct. Rep. 694; *Wall* v. *County of Monroe,* 103 U. S. 74; *Claiborne County* v. *Brooks,* 111 U. S. 408, 4 Sup. Ct. Rep. 489; *Kelley* v. *Mayor, etc.,* 4 Hill, 263.  They were also held to be negotiable instruments in *Bull* v. *Sims,* 23 N. Y. 570, and in *Brill* v. *Tuttle,* 81 N. Y. 454.  It was said that they operated as an assignment of so much of the fund as the amount of the order.  The act of 1887 does not seem to be limited to negotiable paper, but to extend to any chose in action if the instrument be payable to bearer, and be made by a corporation or in behalf of a corporation; but, even assuming that it is limited to negotiable paper, we think that these instruments so far participate of that character that suit may be brought upon them by any holder.

3. The third defense is that the plaintiff is bound to prove the proceedings for the assessment and collection of the tax to have been regular.  Undoubtedly, the regularity of such proceedings may be examined on *certiorari* to the drain commissioner, (*Kroop* v. *Forman,* 31 Mich. 144; *Whiteford* v. *Probate Judge,* 53 Mich. 130, 18 N. W. Rep. 593;) or upon a bill filed to restrain the collection of the tax, (*Frost* v. *Leatherman,* 55 Mich. 33, 20 N. W. Rep. 705.)  But in actions upon orders drawn upon the county treasurer to pay for services rendered, it is said by the supreme court, in *Wall* v. *County of Monroe,* 103 U. S. 77, the orders established *prima facie* the validity of the claims allowed, and authorized their payment.  It is further said that the warrants, being in form negotiable, are transferable by delivery so far as to authorize the holder to demand payment of them, and to maintain in his own name an action upon them; but they are not negotiable in the sense of the law-merchant, so that, when held by a *bona fide* purchaser, evidence of their invalidity, or defenses available against the original payee, would

be excluded. The transferee takes them subject to all legal and equitable defenses which existed to them in the hands of such payee.

4. It is said, however, that the case of *Brownell* v. *Supervisors*, 49 Mich. 414, 13 N. W. Rep. 798, is conclusive against the right of recovery in this case. That was an application for a writ of *mandamus* for the payment of these very orders. The court held that the relator, Eliza W. Brownell, had not shown herself to be the holder and legal owner of these orders, and that she was not entitled to the writ unless her right to such orders was either admitted or proved. It was further intimated in that case that Scriven, the original holder of these orders, could not have recovery upon them, because he, having purchased certain state lands, against which a portion of these taxes had been assessed, had filed a bill in chancery in the circuit court for Gratiot county against the commissioner of the state land-office, and procured a decree declaring the assessment on such lands to be illegal and void. In pursuance of this decree, these lands were patented by the state to Scriven without the payment of said taxes, or any part thereof. It was said that, under these circumstances, neither Scriven nor any person claiming under him could, with a very good grace, ask that a discretionary writ should be issued as prayed for in that case. We do not understand, however, what there is in this opinion to create an estoppel. We are not informed of the grounds on which the court set aside these taxes, nor do we understand why the board of supervisors had not ample power, under the act, to re-assess these taxes upon the same or other lands benefited by the drain. We know of no reason why a paving contractor, for instance, owning a lot upon a certain street which he has paved, may not institute a bill to have the taxes assessed upon such lot declared to be illegal, in which case we understand the tax would either be reassessed or assessed upon the other lots upon the same street. To say that he is thereby debarred from recovering the amount of his paving contract is practically to say that he must pay a tax himself which the court has declared to be illegal or improperly assessed. While we should desire to give full force to the opinion of the supreme court in this case, the point really decided was that the relator had not made title to these orders. There was no such construction given to the drain law as would be binding upon this court, nor are there any reasons given in this opinion why a holder of these orders might not maintain suit upon them. It was said to be doubtful whether, under this legislation, it was contemplated that parties could purchase state lands against which taxes had been entered up, and have the same set aside; but that is precisely what Scriven appears to have done in this case. We do not understand the court to decide that an action could not be maintained against the county upon these orders, but only in its discretion it would refuse a writ of *mandamus*. We are not fully persuaded that the reason stated in the latter part of this opinion for denying the writ is a sound one, but in any event we hold that it is not applicable to this case.

We do not find it necessary to discuss at length the question as to when the statute of limitations begins to run upon these orders, because,

as to all but one of them, it is admitted that a payment was made in 1885, which, upon any construction, would take them out of the statute. Upon the remaining order it is quite evident that the statute is a complete defense. I shall therefore instruct the jury to render a verdict for the plaintiff in this case for the sum of $4,847.12, and interest from November 7th.

NOTE. A motion for a new trial, argued before the circuit and district judges, was denied.