## UNITED STATES *v.* COUNTY OF CLARK.

A county subscribed for stock of a railroad corporation, and issued bonds in payment therefor, pursuant to a law which authorized a levy of a special tax to pay them, " not to exceed one-twentieth of one per cent upon the assessed value of taxable property for each year," but contained no provision that only the fund so derived should be applied to their payment. *Held,* that the bonds are debts of the county as fully as any other of its liabilities, and that for any balance remaining due on account of principal or interest after the application thereto of the proceeds of such tax the holders of them are entitled to payment out of the general funds of the county.

ERROR to the Circuit Court of the United States for the Eastern District of Missouri.

On the fourth day of January, 1876, the United States, on the relation of William A. Johnston, filed in the court below a petition for a *mandamus* against the County Court of Clark County, Missouri, and the justices thereof.

The case exhibited by the pleadings is this: On the sixth day of June, 1874, said Johnston recovered a judgment in said Circuit Court against that county for $8,606.64 and costs. The judgment was for unpaid instalments of interest on bonds of the county, each for $500, issued on the first day of June, 1871, by order of the county court, in execution of a power conferred by the charter of the Missouri & Mississippi Railroad Company. The whole issue under the order was $200,000, and the judgment was for interest upon one-fourth of the amount. An execution having been issued upon the judgment, and a return made that no property could be found, he applied for a *mandamus* requiring the county court and the justices thereof to direct

the clerk of the county to draw a warrant on the county treas-urer for the balance of the judgment remaining unpaid, so that he might be enabled, on its presentation, to have it paid in its order out of the county treasury. His right to such a warrant, and the duty of the county court to direct it to be drawn, are claimed to be founded upon the general statutes of the State. The act respecting the powers and duties of county courts (Wagner, Stat. 414, sect. 28) enacts as follows: " Each county court shall have power to audit, adjust, and settle all accounts to which the county shall be a party; to order the payment out of the county treasury of any sum of money found due by the county ;" and the thirty-first section provides that, " when the court shall ascertain any sum of money to be due from the county, they shall order their clerk to issue a warrant therefor," drawn upon the county treasurer, prescribing the form. The thirty-second section requires every such warrant to be drawn for the whole amount ascertained to be due to the person entitled to the same ; and by the eighth section of the act warrants are required to be paid in the order of their presentation.

Such, in the main, is the case made by the relator. The de-fendants concede the recovery of the judgment and the lawful issue of the bonds, but aver that the charter of said company ex-pressly provided that the levy of a tax by the county court should not exceed one-twentieth of one per cent each year for the payment of the bonds and the interest thereon. They further aver that they have levied that tax; that they have no authority to provide any other revenue fund for the payment of the said bonds or interest, or any judgment thereon ; that the relator is not entitled to have his judgment paid out of any other fund; that the fund is to be distributed proportionately among all the holders of the bonds of the $200,000 issue ; that there is no fund in the treasury applicable to the bonds ; and that they are not authorized to order a warrant for the relator's judgment payable out of any other fund than that derived from the tax of one-twentieth of one per cent authorized by that charter.

The provision of the charter mentioned in the pleadings is as follows : " It shall be lawful for the corporate authorities of any city or town, or the county court of any county, desiring so to

do, to subscribe to the capital stock of said company, and may issue bonds therefor, and levy a tax to pay the same not to exceed one-twentieth of one per cent upon the assessed value of taxable property for each year."

The statutes of the State make it the duty of the county court to levy taxes for county uses, not exceeding the rate of five mills, or one-half per cent. The tax of one-twentieth of one per cent is an authorized addition to this.

The United States demurred to the defence. The demurrer was sustained and the petition dismissed. This writ of error was then sued out.

*Mr. George W. McCrary* in support of the judgment below.

The county court is expressly restricted from levying more than one-twentieth of one per cent in any one year to pay the bonds and coupons in controversy, or any judgment thereon. Sect. 13 of the charter of the Missouri & Mississippi Railroad Company. Session Acts of Mo., 1865, p. 88; *Supervisors* v. *United States*, 18 Wall. 71; *State* v. *Shortridge et al.*, 56 Mo. 126.

The relator is not entitled to a warrant payable out of the ordinary revenues of the county, and the defendants below have no authority to direct its issue. The only fund applicable to the payment of his judgment is that derived from the special tax which the charter empowers the county court to levy.

The statute of Missouri (1 Wagner, Stat. 410 *et seq.*) provides that all warrants drawn upon the treasurer of the county shall state the fund out of which the same are to be paid, and prescribes a form for drawing them. If there be on hand no such fund as that mentioned in the warrants which are presented for payment, he makes on them an indorsement to that effect.

The law in force when the bonds were issued obviously requires that the different funds in the county treasury shall be faithfully and exclusively applied to the specific purposes for which they have been respectively collected. Notice was thus given that these securities were payable out of a special fund, in raising which the taxing power of the county court is expressly limited, and the holders of them must resort to that fund alone for payment.

*Mr. James Grant, contra.*

No question as to the validity of the bonds is raised. As they

are the obligations of the county, the holder of them is entitled to payment from its funds in the same manner as other parties whose claims are a general charge upon it.

The provision of the charter for the levy of a special tax was intended to give increased value in the market to the bonds, and furnish an additional security to the holder of them, but not to limit his right to the avails which that tax would produce.

Mr. Justice Strong, after stating the case, delivered the opinion of the court.

The question presented by the record is, whether the relator is entitled to payment of his judgment out of the general funds of the county, so far as the special tax of one-twentieth of one per cent is insufficient to pay it. And we think that he is thus entitled is plain enough, unless the act which gave the county authority to issue the bonds directs otherwise. That act gave plenary authority to the county to subscribe to the capital stock of the railroad company and to issue bonds therefor, but imposed no limit upon the amount which it empowered a county to subscribe, and for the payment of which authority was given for the issue of county bonds. This was left to the discretion of the county court. So it has been held by the Supreme Court of the State. *State* v. *Shortridge et al.,* 56 Mo. 126. A limitation was, however, prescribed for the special tax which was allowed to be levied. But that was a special tax, distinct from and in addition to the ordinary tax which, by other statutes, the county court was authorized to levy; probably supposed to be made necessary by the new liabilities the county might assume. There is no provision in the act that the proceeds of the special tax alone shall be applied to the payment of the bonds. None is expressed, and none, we think, can fairly be implied. It is no uncommon thing in legislation to provide a particular fund as additional security for the payment of a debt. It has often been done by the States, and more than once by the Federal government. The act of Congress of Feb. 25, 1862 (12 Stat. 346), set apart the coin paid for duties on imported goods as a special fund for the payment of interest on the public debt and for the purchase of one per cent thereof for a sinking fund; yet no one ever thought the

obligation to pay the debt is limited by the amount of the duties collected.   Limitations upon a special fund provided to aid in the payment of a debt are in no sense restrictions of the liability of the debtor.   Why, then, must not the special tax of one-twentieth of one per cent be regarded as merely an additional provision made for the payment of the new debt authorized, rather than as a denial to the creditors of any resort to the ordinary sources from which payment of county debts is to be made?   Why should such a provision be construed as placing the holders of the bonds in a worse situation than that of other creditors of the county?   These bonds are a debt of the county as fully as is any other liability.   Had the act which gave power to the county to issue them said nothing of any special tax, there could be no question that the holders of the bonds, like other creditors, would have a resort to the money in the county treasury collected for the discharge of its obligations; for it is by the law made the duty of the county court to order the payment out of the county treasury of any sum of money found by them to be due from the county.   It would, therefore, have been the court's duty to direct its clerk to issue a warrant for payment, as in other cases.   And surely it is not to be held, unless such a construction of the statute is absolutely necessary, that when the legislature authorized the county to incur the debt, it intended to deny to the creditor the right to look to the treasury of the county for its payment; in other words, that the debt was sanctioned, but that it was stripped of the usual incidents of a debt, and the debtor was relieved from attendant liabilities. And it is not to be inferred, from a provision giving the creditor the benefit of a special fund, that it was intended to place him in a worse position than that he would have occupied had no such provision been made.   And that, too, in the absence of any direction that he must look exclusively to that fund.   Such is not a reasonable construction of the statute.   Such is not a fair implication of its purpose.   It accords neither with its letter nor with its spirit.   Yet it is for such an implication the defendants contend, and upon it their case wholly rests.

The bonds, as we have said, and as is conceded, are an authorized debt of the county.   The purpose for which they were authorized is manifest.   It was to furnish aid to the construc-

tion of a railroad in which the public, and especially the county of Clark, were thought to be interested. The bonds, it is to be presumed, were intended to be for sale in the market; and it was the obvious intent alike of the State, of the railroad company, and of the county that they should bring the highest price possible. For this reason, probably, the tax of one-twentieth of one per cent was authorized, with a view to give to them additional credit, to make them more salable, and to enable the railroad company or the county to obtain for them a larger price. Surely it could not have been to depreciate their value, and make them almost worthless in the market. It was said during the argument, and not denied, that the taxable property of the county is valued at $3,700,000. A tax of one-twentieth of one per cent upon that sum, taking no account of exonerations and failure to collect, would yield only $1,850, less than one-eighth of the annual interest of the debt authorized and incurred. It is incredible that the legislature intended to deny to the purchasers of the bonds any right to look for payment beyond such a meagre provision; or, if it was so intended, that the intention would not have been expressed in precise terms. In the absence of any express declaration that the creditor's right to claim payment shall not reach beyond the fund derived from the small special tax, we cannot think the legislature proposed rendering the bonds unsalable or almost worthless in the hands of those who might be so unfortunate as to hold them. Such an intention would have defeated the object sought to be secured by giving authority for their issue. Nor can we think that the legislature intended to set a trap for purchasers, and lead them to suppose they were obtaining valuable securities, when, in fact, they would obtain what was worth next to nothing. The statute justifies no implication of any such legislative intention. If it be said that the legislature, in limiting the special tax allowed, contemplated no issue of bonds beyond what one-twentieth of one per cent would pay, and did not anticipate the improvidence of purchasers who might buy bonds issued in excess of that sum, it may be answered, that still a larger issue was in fact authorized. Such an issue must, therefore, have been considered as possible. And it would be absurd to hold that the legislative intent was to allow the issue and

sale of county bonds for a sum more than one hundred times larger than the debt acknowledged by them to be due, and more than one hundred times larger than the purchasers would be entitled to recover.

We have been referred to the cases of *Supervisors* v. *United States* (18 Wall. 71) and *State* v. *Shortridge et al. (supra)*, as sustaining the construction of the statute contended for by the defendants. In fact, however, they afford it no support. In the former of these cases, we held that a statute of the State of Iowa conferred no power to levy a specific tax to pay a judgment rendered against a county on warrants for ordinary county expenditures, and we asserted that a *mandamus* will not be awarded to compel county officers of a State to do any act which they are not authorized to do by the laws of the State from which they claim their powers. We adhere now to what we then decided. But we have in hand no such case. The present is not an attempt to enforce the levy of any special tax, or of any tax. It asserts no power in the county court to levy a tax, which the defendants deny they have. It claims only a right to share in the product of a tax confessedly authorized. We do not, therefore, perceive that the case has any applicability to the subject we have before us. And *State* v. *Shortridge et al.*, though claimed to be in point, is equally inapplicable, when it is observed what the case was and what was decided. It was a suit for a *mandamus* to compel the county court of Macon County to levy a tax for the payment of the principal and interest of several railroad bonds issued in payment of a subscription by the county to the capital stock of the Missouri & Mississippi Railroad Company. The bonds had been issued by virtue of a legislative act similar to that under which the bonds of the present relator were issued. The county had levied the special tax authorized by the act, and the application was for a *mandamus* to compel the levy of another tax specially for the payment of the bonds, in addition to that allowed; namely, that of one-twentieth of one per cent. The court refused the writ, holding that no other special tax was authorized by law than the one mentioned in the charter of the railroad company; and, as that had been levied, that there was no right to levy another. This was the only question before the court, and the

decision is authority only to the extent of the case before it. The court does not appear to have decided that the county court could not levy a general tax for the expenses and liabilities of the county. It was only called upon to consider how far an extraordinary or special tax could be levied. The case called for nothing more; and, if more was intended by the judge who delivered the opinion, it was purely *obiter*. In the present case, as already said, there is no effort to enforce the levy of any special tax

Upon the whole, therefore, we think the relator is entitled to the *mandamus* for which he prays.

*Judgment reversed, with instructions to give judgment on the demurrer to the return against the respondents.*

MR. CHIEF JUSTICE WAITE, with whom concurred MR. JUSTICE MILLER and MR. JUSTICE BRADLEY, dissenting.

I am unable to concur in this judgment. I think the act under which the bonds were issued limited the power of taxation for their payment; and that the holders are chargeable with notice of the limitation. The debt authorized was one payable from a particular fund. If the fund is deficient, the legislature alone has the power to grant the necessary relief.