FT. MADISON WATER CO. v. CITY OF FT. MADISON.

(Circuit Court, S. D. Iowa, E. D.   December 17, 1900.)

No. 333.

1. MUNICIPAL CORPORATIONS—CONTRACTS FOR WATER—IOWA STATUTE.

McClain's Code Iowa, § 641, authorizes cities to contract with an individual or company for the erection of waterworks and the furnishing of water for public use, "and to pay therefor such sum or sums as may be agreed upon between said contracting parties."   Section 643 provides that "such city shall levy each year and cause to be collected a special tax as provided for above sufficient to pay off such water rents so agreed to be paid to such individual or company constructing said works: provided, however, that said tax shall not exceed the sum of five mills on the dollar for any one year."   *Held*, that the latter provision was not a limitation upon the power to contract conferred upon a city by section 641, but merely provided for a special fund to be applied on the rentals contracted to be paid by the city, and that the application of such fund thereon, if insufficient to discharge the contract obligation in full, did not release the city from further liability.

2. SAME—CONTRACT CONSTRUED.

In 1885, while such sections of the Code were in force, a city contracted by ordinance for the erection of waterworks by an individual, and bound itself to pay rental for a certain number of hydrants, and for additional ones in case of extensions of the mains made by order of the city; the contract containing the following provision: "Said hydrant rental to be paid quarterly out of the special tax fund to be levied and collected as other taxes of the city are for this purpose."   *Held*, that such provision could not be construed as limiting the liability of the city for hydrants furnished in accordance with the contract to the sum collected from the special tax levy, and that it was no defense to an action to recover unpaid rentals that the city had levied such special tax to the limit allowed by the statute, and applied all the proceeds in payment of such rentals.

At Law. Action to recover rentals for hydrants supplied to defendant city under contract.

James C. Davis, for plaintiff.
E. C. Weber and F. T. Hughes, for defendant.

McPHERSON, District Judge. The plaintiff in its petition alleges that it is the successor and assignee of one Inman, who in 1885 made a contract with the defendant city, the latter acting by ordinance, and Inman by a written acceptance of the ordinance. The petition is in paragraphs, as follows, in substance: In paragraphs 1, 2, and 3 the citizenship of the parties and the amount in controversy, conferring jurisdiction upon this court, are alleged. Paragraph 4 alleges that said ordinance was adopted by defendant May 29, 1885, whereby a contract by Inman accepting the ordinance was made, by virtue of which contract Inman agreed to furnish the city and its citizens with a public and private supply of water for 20 years. Paragraph 5 alleges that it is the successor and assignee of Inman of said contract rights, and makes a copy of said ordinance and acceptance a part of the petition. Paragraph 6 alleges that Inman, and plaintiff as his successor, on the ———— day of ————, 1885, in said city, erected the water plant, and at all times since have supplied the city and its inhabitants with a public and private supply of water. Paragraph 7 alleges that from time to time, by direction of the city, plaintiff has put in additional hydrants, as provided by section 4 of the ordinance, until in the year 1896 plaintiff had placed and had in operation 138 hydrants, and from said date until the present had maintained the 138 hydrants, and given the city the service of said hydrants, furnished water, etc., and that the city has paid for the said service, excepting as hereinafter alleged. Paragraph 8 alleges that there is now due and owing it from defendant for the quarter ending June 30, 1900, one quarter's rental of 40 hydrants at the rate of $75 per annum and 98 hydrants at the rate of $60 per annum, making the amount due for the quarter $2,220, and, unless the same is sooner paid. there will become due September 30, 1900, the further sum of $2,220. Paragraph 9: October 5, 1900, an amendment to the petition was filed, repeating the foregoing allegations, and alleging the nonpayment, etc., of the $2,220 falling due on September 30, 1900, as above set forth. Plaintiff demands judgment for $4,440, with interest and costs. Defendant has filed its answer, as follows: Paragraph 1 admits paragraphs 1, 2, 3, 4, 5, and 6 of the petition. Paragraph 2 alleges an absence of information as to the recitals of paragraph 7 of the petition. Paragraph 3 pleads said ordinance by referring to it, and alleges that it owes plaintiff no sum for either quarters, for that the ordinance provides the hydrant rental shall be paid quarterly out of a special fund to be levied and collected as other taxes of the city, and the ordinance contract relating to the hydrant rentals is in excess and beyond the proceeds of the five-mill tax upon taxable property within the fire limits to benefit or protection, and is void and of no effect. Paragraph 4 alleges the city has collected and paid the

five-mill levy, which from the year 1896 has not raised sufficient to pay said rental, and the city has not any right to pay out of the general fund on such account. Paragraph 5, further answering paragraph 8 of the petition, alleges the water furnished was not of the quality, or thrown to such height, as the ordinance requires. Plaintiff has demurred to the answer as follows: To paragraph 3 of the answer for the reason that said ordinance creates an absolute liability, and the facts stated constitute no defense. To paragraph 4 of the answer because the facts stated are no defense as to the liability of the city, and because said facts can only be inquired into in proceedings looking to the collection of the judgment that may be rendered herein. And to paragraph 5 of the answer because the city is estopped, having received the water and the service, etc.

At the hearing on the demurrer, paragraph 5 of the answer, by agreement in open court, was to be considered as withdrawn, as were all denials of the answer, and the case considered fully tried, as well as a hearing on the demurrer. Therefore plaintiff is or is not entitled to judgment for the amount sued for, with interest, as the ordinance pleaded by both parties shall be construed.

The ordinance covers many details which need not be set forth. It provides for the erection of the works, charges to be made private consumers, the placing of the mains, penalties for any person interfering with the property, etc., and so on. Sections 4, 5, and 6 of the ordinance are as follows:

"Sec. 4. The city of Ft. Madison, to supply itself with water for fire protection, hereby agrees to rent from said George B. Inman, his heirs, successors or assigns, fifty-one (51) fire hydrants during the continuance of this franchise, paying therefor an annual rental of seventy-five dollars ($75) each for the first forty (40) hydrants, and the sum of sixty dollars ($60) each per year for all hydrants over forty (40); said hydrant rental to be paid quarterly out of the special tax fund to be levied and collected as other taxes of the city are for this purpose.

"Sec. 5. The city of Ft. Madison may from time to time order additional water mains and pipes to be laid in the streets of said city, and the said George B. Inman, his heirs, successors or assigns, agrees to lay such additional mains when so ordered by the city, provided that no extension so ordered shall be less than for one block, and out of each and every extension so made the city shall rent one additional hydrant for every block laid.

"Sec. 6. The annual rental for all additional hydrants so ordered by the city shall be $60 each, to be collected and paid for in the same manner as the fifty-one (51), and the time when said hydrant rental shall commence shall be at the time said hydrants or additional hydrants shall be erected and ready for use, and the city clerk shall have been notified thereof by the said George B. Inman, his heirs, successors and assigns, or his or their duly authorized agent."

I set forth the three sections to the end it may be seen I have fully considered all having any bearing on the question. But, in my judgment, section 4 only is material. That section provides the city will rent the hydrants, and that Inman and his assigns will furnish them as ordered by the city. The city agrees to pay a stipulated price per annum, payable quarterly, for the hydrants thus ordered by the city, and supplied and operated by plaintiff. After agreeing to pay the rentals, section 4 of the ordinance concludes as follows: "Said hydrant rental to be paid quarterly out of the

special tax fund to be levied and collected as other taxes of the city for this purpose." The defendant city is subject to the general laws of the state pertaining to cities of the second class. The ordinance (if valid) and its acceptance constituted a contract which cannot be impaired by any subsequent legislation of the state. And it is conceded, as all will admit without such concession, that the ordinance is valid unless the concluding clause of section 4 is invalid, if it is to be construed as binding the city in excess of the special levy of five mills. It need only be stated that the city has such powers, and such only, as are recited in the statutes; and the ordinance in question and its acceptance, making a contract, must be construed under the statutes of Iowa in force in 1885. What were the statutes of Iowa in force in the year 1885, when this contract was made? Section 615, McClain's Code, provided for the general welfare of the city, and for the protection of both corporate and private property. Section 641 provided that contracts might be made by a city with another party for the erection, maintenance, and operation of waterworks for public consumption and for individual consumers, and concluded with these words: "And to pay therefor such sum or sums as may be agreed upon between said contracting parties." If this were all, there would be no room for contention, because thus far we have a plain and absolutely binding contract, binding plaintiff to build its plant, maintain and operate the same, and furnish and operate such hydrants as the city may require. The city did require 138 hydrants, and the plaintiff furnished them and operated them during the times in question; and the city has agreed to pay for them, but has defaulted. If this were a suit on a contract between individuals, no one would question the validity and binding force of the contract. And the statute just referred to (section 641 of McClain's Code) says the city shall "pay therefor such sum or sums as may be agreed upon between said contracting parties." But in the year 1885 there was another statute of Iowa in force. McClain's Code, § 643, provides, after reciting that if the contract is with an individual, as follows:

"Such city shall levy each year, and cause to be collected, a special tax as provided for above, sufficient to pay off such water rents so agreed to be paid to said individual or company constructing said works: Provided, however, that said tax shall not exceed the sum of five mills on the dollar for any one year."

And the clause just quoted gives rise to the only contention: Is the five-mill levy the only revenue to be raised or applied on the contract? Defendant contends that this clause is a limitation upon the power to contract. Its counsel in effect, but not in terms, contend that plaintiff must build additional mains and put in additional hydrants in such numbers as the city from time to time may demand, and that such parts of the contract would be binding upon plaintiff; but that the city need not pay therefor in excess of the moneys raised by the five-mill levy. Can it be possible that plaintiff must put the hydrants in, and the city pay nothing therefor? Or, having put them in, can plaintiff take such number out as will reduce the rentals to such sum that the five-mill levy will pay for the balance?

If so, and the city will not direct what hydrants are to be taken out; how will that controversy be settled? Or shall it be the last put in shall be the first taken out? And shall this be regardless of the growth of the city in this, that, or the other direction? Aside from precedents, I do not believe that section 643 of the statute is a limitation upon the powers otherwise conferred by section 641. In my judgment, section 643 creates a fund to be applied on the contract price, and not in extinguishment of the contract price. I believe section 643 provides a sinking fund, or a security for the payment, and, when this sinking fund or security falls short of the sum necessary, a general liability for the balance exists, which can be enforced. As well say, when the mortgage security is exhausted a note thereby secured is at an end, as to say this contract in suit is paid off by the five-mill levy. Who would claim a debt is discharged because the sinking fund is exhausted? I have given much attention to this case, and can view the question in no other way, and can reach no other conclusion. Such conclusion I would announce if there were no authorities, and I consider myself bound by the decided cases: (1) Creston Waterworks Co. v. City of Creston, 101 Iowa, 694, 70 N. W. 739; (2) U. S. v. Clark Co., 96 U. S. 214, 24 L. Ed. 628. If the question in the case at bar be, what construction has been placed upon these Iowa statutes by the Iowa supreme court, then the only answer is found in 101 Iowa, 694, 70 N. W. 739. If the construction of these Iowa statutes by the Iowa supreme court is binding upon this court, then the questions in the case at bar are foreclosed. And, if the question is not put at rest by the Iowa supreme court, then the case by the United States supreme court several times approved ought to put it at rest, as it is binding upon this court. The fact that that case was decided by a divided court, or the fact that the supreme court of Missouri and others have criticised it, is to me an argument of no great persuasive force. The case has not been overruled, and with propriety cannot be disregarded by this court.

Counsel for both parties herein have cited many cases which I do not care to review. Plaintiff's counsel with much confidence cites Grand Junction Water Co. v. City of Grand Junction (Colo. App.) 60 Pac. 196, and the case is entitled to much weight. Defendant's counsel cites several Missouri cases, only one of which to me seems at all in point. But defendant's counsel lays much stress upon the case of Boro v. Phillips Co., 4 Dill. 216, Fed. Cas. No. 1,663. Judge Caldwell wrote the opinion. In that case the law required in express terms that the money be paid by the treasurer of the district, and not by the county, and, of course, Judge Caldwell held that the county, as a county, was not liable. Counsel for defendant might have cited the case of Dashner v. Mills Co., 88 Iowa, 401, 55 N. W. 468, making a like holding as decided by Judge Caldwell in 4 Dill. 216, Fed. Cas. No. 1,663. But the decisions of Judge Caldwell and the supreme court of Iowa (88 Iowa, 401, 55 N. W. 468) do not have the slightest application to the case at bar. In those cases there were no contracts by the county. In the case at bar we have a contract by the city. In those cases the districts had a legal being. In

the case at bar no such district is recognized as an entity. If, after judgment herein, and a failure to discharge by payment of the judgment, a mandamus should issue to levy and collect taxes for such purposes, the question should arise, it can then be determined upon whom of the taxpayers of the city the burden shall rest. If the Dashner Case (88 Iowa, 55 N. W.) like the 4 Dill. case, is in point, the answer is that the Creston Waterworks Case (101 Iowa, 70 N. W.) was otherwise decided at a later date. And defendant's counsel cite with confidence the New Mexico case of Raton Waterworks v. City of Raton, 49 Pac. 898. Much that is said therein does not tend to support their view. But in New Mexico there was no statute, as in Iowa, allowing the city to make an absolute contract to pay such rentals as might be agreed upon.

Finally, defendant's counsel say that in 1897 the Iowa statute was changed to harmonize with their views. The answer to that is that such change in the law, instead of being an argument for it, is a strong argument against the city. The old law could not be changed to affect the contract in suit, because of the constitutional provision against impairing the obligation of contracts. What the law for future contracts may be does not now concern us. As to prior contracts the law had been settled by the supreme court. Why add words when it was well understood? I will not pursue the matter further.

I maintain plaintiff should recover herein for three reasons, viz.: (1) The fair construction of the statutes in force in 1835 requires such holding. (2) The said Iowa statutes have been so construed by the Iowa supreme court, and that decision is binding upon this court. (3) If it is a matter of general law, and not Iowa's local law and decisions, then the decision in 96 U. S., 24 L. Ed., is binding, and the more so in view of the fact the case has been many times approved by that court. Macon Co. v. Huidekoper, 99 U. S. 592, 25 L. Ed. 333, note; Knox Co. Court v. U. S., 109 U. S. 229, 3 Sup. Ct. 131, 27 L. Ed. 915; Macon Co. v. Huidekoper, 134 U. S. 336, 10 Sup. Ct. 491, 33 L. Ed. 914.

A judgment is accordingly ordered for the plaintiff, and against the defendant city, for the full amount sued for.