CHARLES W. YOUNG, APPELLANT, V. CITY OF BROKEN BOW,
APPELLEE.

FILED OCTOBER 17, 1913. No. 16,778.

1. **Judgment: RES JUDICATA.** *City of Broken Bow v. Broken Bow Water-Works Co.*, 57 Neb. 548, examined and *held res judicata* as to the validity of the judgments in controversy in this action.

2. ———: DORMANT JUDGMENT: REMEDIES. The right to prosecute proceedings to revive a dormant judgment and the right to maintain an action upon the same are cumulative remedies, and the judgment creditor may have either or both as he sees fit; and where either of such rights is asserted the court may in its discretion, under proper evidence, formally give judgment for the other.

3. ———: ———: REVIVOR. Where in an action, the nature of which is to obtain the revivor of a dormant judgment, such judgment is found to be valid and not fully paid, it will be revived.

APPEAL from the district court for Custer county: BENJAMIN F. GOOD, JUDGE. *Reversed with directions.*

*Rich, O'Neill & Gilbert* and *Alpha Morgan,* for appellant.

*Silas A. Holcomb* and *N. T. Gadd, contra.*

FAWCETT, J.

This suit was instituted in the district court for Custer county upon three judgments obtained by the Broken Bow Water-Works Company against the city of Broken Bow in the years 1892, 1893, and 1894, respectively, and thereafter assigned to plaintiff; all of said judgments now being dormant. From a judgment in favor of defendant, plaintiff appeals.

The controversy between the water-works company and plaintiff, as the assignee of its judgments, and the city has been considered by this court on four different occasions: *State v. Royse,* 3 Neb. (Unof.), 262, 269, 71 Neb. 1, and *City of Broken Bow v. Broken Bow Water-Works*

*Co.*, 57 Neb. 548. For a history of the controversy reference is made to those opinions.

One of the defenses interposed by the city is that all of the judgments are barred by the statute of limitations. Counsel for defendant abandons this contention in his brief, and concedes that under the authority of *Snell v. Rue*, 72 Neb. 571, this defense must fail. The next defense is that the first and third judgments are void for want of jurisdiction of the court over the defendant when they were rendered. To this defense plaintiff pleads *City of Broken Bow v. Broken Bow Water-Works Co.*, *supra*, as *res judicata*. We think this plea is good and that the validity of the judgments in controversy cannot again be inquired into.

The next defense, and the one which counsel for defendant characterizes as "the principal defense in this case," is based upon the proposition that the city has fully discharged its obligation under its contract with the water company for the amounts agreed to be paid for hydrant rentals; that, the judgments being for hydrant rentals, they too are satisfied and discharged; and that the city has exhausted its debt-paying power with respect to its hydrant rentals under its contract with the water company. We do not deem it necessary to consider all of the arguments pro and con upon this point, but leave them to be considered, should they ever subsequently arise, in an action under issues properly framed and which squarely present such questions, which we do not think is true in the present case. The only question which we deem material to decide at this time is the right of the plaintiff to have a revivor of his dormant judgments.

Section 9 of the contract entered into between the city and the water-works company provided: "In consideration of the benefits which shall be derived by the said city and its inhabitants, * * * the city of Broken Bow * * * hereby promises and agrees to pay rent for the said 30 hydrants at the rate of $85 per annum, for each and every hydrant, * * * in semiannual installments, on the

first Tuesday of May, and first Tuesday in November, in each and every year during the said term to the said grantees, their heirs and assigns." The contract was entered into in 1888, and was to run 25 years.

Section 6 of the contract provided: "A sufficient tax, not exceeding seven mills on the dollar, shall be levied and collected annually upon all taxable property upon the assessment roll of said city, to meet the payments under this ordinance, when and as they shall respectively mature during the existence of any contract for hydrant rentals, and shall be levied and kept as a separate fund known as the 'water fund' and shall be irrevocably and exclusively devoted to the payment of hydrant rentals under this ordinance, and shall not be otherwise employed."

On April 1, 1904, the city acquired the water plant through a sale by the master in chancery in a suit pending in the United States circuit court for the district of Nebraska, and since that time has controlled and operated the same. Upon the trial of this case it was stipulated as follows:

"It is admitted that each and every year during the existence of the water-works company and while it maintained and operated the plant and until the sale to the city of Broken Bow, April 1st, 1904, there was levied annually by the proper authorities a tax of seven mills on the dollar assessed valuation, such levies being for and designated as hydrant rental, the same being levied for the purpose of paying hydrant rentals.

"It is stipulated, subject to such objections as may be interposed, that at the time of the acquisition of the Broken Bow water-works system by the defendant, the city of Broken Bow, there was on hand in said treasury in hydrant rental fund derived from the seven-mill levy which had been levied annually theretofore $1,566.59, which fund or amount was retained and used by the city; that all other moneys realized from the seven-mill levy, from the beginning of the operation of the water-works plant until its acquisition as aforesaid by the defendant

city, had been collected and applied in satisfaction of the hydrant rentals due under the franchise contract entered into between the city and the water-works company."

It appears from the above stipulation of facts that the defendant city, at the time it acquired the water-works, had in its possession $1,566.59, derived from the seven-mill levy which had been theretofore annually levied. There is no claim that this money has ever been paid over to plaintiff. Counsel for defendant undertakes to justify the city in holding this money by stating that "the deed from the master in chancery in the foreclosure sale under the order and decree of the court conveyed to the purchaser, not only the plant and system, but also. 'all rights, interest, title, claim and demands of every name and nature which have in anywise come to the said Broken Bow Water-Works Company, or in anywise arisen under a certain ordinance of the city of Broken Bow, passed on the 23d day of April, 1888, and all debts, dues, rentals, claims and demands of every name and nature however, arising against the said city, whether such have heretofore accrued and are now existing, or may at any time hereafter accrue to said company.' The conveyance from the purchaser at foreclosure sale to the city contained likewise the same provisions as hereinbefore referred to." To our minds this is a very unsatisfactory pretext under which to claim the right to retain over $1,500 which defendant admits was collected under the seven-mill levy, and which under its contract with the water company it agreed should be "levied and kept as a separate fund known as the 'water fund' and shall be irrevocably and exclusively devoted to the payment of hydrant rentals under this ordinance, and shall not be otherwise employed." Plaintiff had, with the full knowledge of the city, become the owner of the three judgments long prior to the commencement of the foreclosure proceedings in the federal court. He thereby became entitled to receive all hydrant rentals derived from the seven-mill levy. Such rentals, as soon as collected, became a trust fund to "be irrevocably and ex-

clusively devoted to the payment" of his judgments. The simple fact that the water company was unable to meet its obligations and its property was sold to meet the same ought not to, and does not, prevent plaintiff from now insisting that the city pay over to him moneys which the city had collected under the law and under its contract with the water company, and which, the moment it was collected, became a trust fund for the specific purpose, "irrevocably," of paying the water company, or its assignee, what the city owed for hydrant rentals. When it purchased the water-works system from the grantee of the receiver, it knew that it had this money, and that the money constituted a trust fund to be applied as above indicated; and the stipulation quoted from the receiver's deed in no manner relieves it from its liability therefor.

The other questions argued in the briefs and at the bar are important questions, which we now think we made a mistake in permitting the parties to press upon us in this action. They are questions which it is not necessary, nor proper, to decide at this time. This action is, to all intents and purposes, one to revive dormant judgments, and will be so treated. The only questions we are called upon to decide are whether the judgments are void, and, if not, whether or not they have been paid. That they are valid judgments is *res judicata;* that they have not been paid is conceded by the stipulation above set out. Hence, the judgments ought to be revived.

The judgment of the district court is therefore reversed and the cause remanded, with directions to enter judgment of revivor of the three judgments in controversy.

REVERSED.

REESE, C. J., not sitting.

ROSE, J., dissenting.

HAMER, J., concurring.

This action is brought upon three judgments rendered

in the district court for Custer county in favor of the Broken Bow Water-Works Company and against the city of Broken Bow, in the years 1892, 1893, and 1894. These judgments were purchased by the plaintiff, who is the appellant. They cover the alleged difference between the price at which the water-works company was to supply the city of Broken Bow with water under a franchise contract with that city and the amount raised and paid out of the levy of an annual tax of seven mills on the dollar upon the taxable property within the state. The three judgments are by this action sought to be revived. It is claimed by the defendant that these judgments must be deemed to be paid because the city exhausted its taxing powers for the payment of hydrant rentals when it levied a seven-mill tax. To the defendant's answer that the three judgments were void, the plaintiff replied that the matter in controversy is *res judicata,* and that the judgments are valid because heretofore declared to be valid in a suit between the same parties in a court of competent jurisdiction. Section 9 of the ordinance provides that the franchise and license granted shall remain in full force and effect for 25 years; that the said city of Broken Bow shall take 30 hydrants during said term of 25 years at the rate of $85 per annum until such time as there are 150 water consumers, and thereafter that the rate shall be $75 per annum for each hydrant up to 50, and above 50 that the price paid by the city shall be $60 per annum. There was a specific promise to pay the price stipulated. It is the contention of the city that, notwithstanding its promise to pay the stipulated price for a supply of water to be furnished through these hydrants, yet the promise is not binding because of the further agreement to levy a tax. As the writer understands the oral argument of counsel for Broken Bow, it seems to make the concession that the legislature and contractors may have contemplated that the seven-mill levy to pay for the use of hydrants might be entirely inadequate at the commencement of the term at the contract price for each year, yet

that towns grow in population and that the value of the taxable property increases, and that it may have been considered by the contracting parties that within the full 25-year period or term of the contract the value of the taxable property of the city would probably increase so that the levy might aggregate enough to pay off the debt; but, nevertheless, counsel for the city make the contention that the levies made and applied exhausted the ability of the city to pay, and therefore paid the debt. Every intelligent person knows that the value of the taxable property in a frontier town multiplies rapidly if the town is prosperous. If the full amount for any one year is not raised, then is there any reason why the remainder of the 25 years and the growth of the city during that time and the increase of its taxable property may not be considered? It is the contention of the city that, because the promise to pay contained a condition that seven mills on the dollar should be annually levied upon the taxable property to meet payments under the ordinance, therefore the city was not bound to pay anything more than the tax specified.

In the *City of Austin v. Cahill*, 99 Tex. 172, 88 S. W. 542, the city had issued its bonds for water and light, and the ordinance provided that there should be levied and collected for the year 1890, and for each year thereafter, a tax to pay the interest and provide a sinking fund. There was a limit allowed by the constitution of $2\frac{1}{2}$ per cent. on the taxable property of the city for any one year. It was held that the neglect of the city to perform its contractual obligations did not enable the city to escape that duty, and that it might be forced to perform the same by mandamus.

In *East St. Louis v. Amy*, 120 U. S. 600, the city of East St. Louis issued its bonds, and had neglected to make the levy for a number of years, when the plaintiff sued to compel payment. It was objected that a tax could not be levied in any one year sufficient to make good the past defaults. Chief Justice Waite said: "The accumulation

of the debt was caused by their own neglect.  *  *  *  We see no reason why it was not in the power of the court to order a single levy to meet the entire judgment."

In *Coy v. City Council of Lyons City,* 17 Ia. 1, the court said: "The object of the suit is to compel payment, and the defense only shows an inability, under the law, to levy sufficient to satisfy it in *one* year, but a clear ability to do it in *subsequent* years. The court  *  *  *  will grant complete relief by providing for the payment of the whole debt."

In *City of Cleveland v. United States,* 111 Fed. 341, where there was a limit to which the city could tax, and and it had neglected to make the levy in former years as provided by the contract, the court held that there was no reason why the relator should be without relief simply because it was beyond the power of the city to levy the whole amount in any one year.

Four opinions have been delivered by this court which relate to this case. The first was prepared by Commissioner FRANK IRVINE, who describes the case as "an action by the city of Broken Bow, with which joined a citizen and taxpayer (Taylor Flick) against the Broken Bow Water-Works Company and others to enjoin the defendants from enforcing three certain judgments recovered by the water-works company against the city." *City of Broken Bow v. Broken Bow Water-Works Co.,* 57 Neb. 548. The opinion in that case (which we will call the Taylor Flick case) makes the subject matter of this particular case *res judicata.* After this comes the case of *State v. Royse,* 3 Neb. (Unof.) 262, filed July 1, 1902, three years after the *Flick* case was decided. There was a rehearing in the *Royse* case November 18, 1903, and Commissioner OLDHAM prepared a second opinion 3 Neb. (Unof.) 269. Then there was a second motion for rehearing, and Chief Justice HOLCOMB wrote an opinion filed February 4, 1904, denying the motion. 71 Neb. 1.

The first of the OLDHAM opinions in the *Royse* case contains this statement (p. 266): "A judgment against

a city or county is but an audited demand against such municipality which is no longer open to contest." The first OLDHAM opinion holds that the claim is audited; that it stands against the city; that it is no longer open to contest; and declares that it will not issue the writ of mandamus to compel the levy of a tax, because there is no power then to do so, meaning at that particular time, but not excluding a consideration of the future. It does not follow that the full limit of 10 mills on the dollar will be required to pay the current expenses of the city for each ensuing year. If there should be an excess raised by the levy of 10 mills above that required to pay the general expenses of the city, then it would seem that such sum might be applied. In the second OLDHAM opinion it is said: "We are asked to re-examine and depart from the doctrine of *United States v. County of Macon,* 99 U. S. 582, 591, 25 L. ed. 331, relied upon to support the conclusion reached at the former hearing, because the facts of this case take it without the reason of the rule there established and bring it within the rule laid down in *United States v. County of Clark,* 96 U. S. 211, and, also, in *Ft. Madison Water Co. v. City of Ft. Madison,* 110 Fed. 901. * * * The special taxes provided for by the statutes construed in each of these cases were held to be an additional grant of power to provide 'a particular fund as additional security for the payment of a debt,' and not as limitations on the power to enter into the various contracts." What OLDHAM said is not reversed or in any way annulled by the HOLCOMB opinion.

In *United States v. County of Macon,* 99 U. S. 582, it was said: "The judgment has the effect of a judicial determination of the validity of his demand and of the amount that is due, but it gives him no new rights in respect to the means of payment." In that case a mandamus was refused, but it was not determined that the money due might not some time be collected.

In *United States v. County of Clark,* 96 U. S. 211. it was held: "That the bonds are debts of the county as

fully as any other of its liabilities, and that for any balance remaining due on account of principal or interest after the application thereto of the proceeds of such tax the holders of them *are entitled to payment out of the general funds of the county.*" In the body of the opinion it was said: "There is no provision in the act that the proceeds of the special tax alone shall be applied to the payment of the bonds. None is expressed, and none, we think, can fairly be implied. It is no uncommon thing in legislation to provide a particular fund as additional security for the payment of a debt. It has often been done by the states, and more than once by the federal government. The act of congress of February 25, 1862 (12 Stat. 346), set apart the coin paid for duties on imported goods as a special fund for the payment of interest on the public debt and for the purchase of one per cent. thereof for a sinking fund; yet no one ever thought the obligation to pay the debt is limited by the amount of the duties collected. Limitations upon a special fund provided to *aid in the payment of a debt are in no sense restrictions of the liability of the debtor.* \* \* \* And it is not to be inferred, from a provision giving the creditor the benefit of a special fund, that it was intended to place him in a worse position than that he would have occupied had no such provision been made. And that, too, in the absence of any direction that he must look exclusively to that fund. Such is not a reasonable construction of the statute. Such is not a fair implication of its purpose. It accords neither with its letter nor with its spirit."

It does not follow that ten mills on the dollar would be required to pay the general expenses of the city every year. Then, if there should be an excess raised by the levy of ten mills above that required to pay the general expenses of the city, it would be proper under the last OLDHAM opinion to apply that sum. In the HOLCOMB opinion it is said: "It is agreed that the judgments owned by the relator *represent an adjudication of the liability of the city of Broken Bow,* for sums due as hydrant rental

or for water supply for fire protection furnished by the water-works company to the city, under an ordinance enacted for that and other purposes, and under which the water-works company is operated." It should be remembered that this court, when that opinion was delivered, was only deciding the question that was then before it, and that question was whether at that time, on the then present valuations, and under the then present statute, and with the then existing conditions, a levy of the tax could be compelled. Suppose the general expenses to run the city require ten mills for one year, but suppose that the next year the value of the property in the city has so increased that it no longer requires ten mills for the runing expenses and that seven mills will pay them, then there would be an excess of three mills to be used for the payment and satisfaction of any indebtedness due from the city. It is hardly credible that the city intended to deny to the holder of the contract any right to look beyond the slender provision for the payment of interest and principal furnished by a levy of only seven mills on the dollar. What could have been the purpose of contracting the liability if it was not to be paid? But it was adjudicated in the *Taylor Flick* case and stipulated that the judgments were owned by the plaintiff in this case, and that they represent an adjudication of the liability of the city of Broken Bow for the sums due as hydrant rentals. The three judgments sued on being rendered in 1892, 1893, and 1894, were therefore in existence long before the foreclosure proceedings in the United States circuit court were commenced, and these judgments were the property of the plaintiff in this case and could not have been divested by that proceeding. The contention of the city that the contract originally made is *ultra vires* was disposed of and became *res judicata* against the city and in favor of the plaintiff January 19, 1899, by the IRVINE opinion (57 Neb. 548), and long before the HOLCOMB opinion (71 Neb. 1), filed February 4, 1904. The HOLCOMB opinion could not have decided that which had already been determined

by this court when it delivered the IRVINE opinion. The district court in the *Taylor Flick* case, in which the IRVINE opinion was delivered (57 Neb. 548), held that the original judgments were "null and void" and "perpetually enjoined" the defendants "from collecting or attempting to collect said judgments or any part thereof." But on appeal this court held the case to be "wholly without merit," and reversed the judgment of the district court. The identical questions here sought to be raised were then raised and determined in the district court in favor of the city and the taxpayer, Taylor Flick, and on appeal this court reversed the judgment as announced in the IRVINE opinion.

In *United States v. County of Clark, supra,* a county had subscribed for stock of a railroad corporation, and had issued bonds in payment thereof, pursuant to a law which authorized a levy of a special tax to pay them "not to exceed one-twentieth of one per cent. upon the assessed value of taxable property for each year." Among other conditions, it was urged by the defense that the relator was not entitled to a warrant payable out of the ordinary revenues of the county. The United States supreme court said: "The question presented by the record is, whether the relator is entitled to payment of his judgment out of the *general funds* of the county, so far as the special tax of one-twentieth of one per cent. is insufficient to pay it." An examination of the decision in *United States v. County of Clark, supra,* shows that it was held that the bonds were the debts of the county as fully as *any other* of the *county's liabilities,* and that for any balance remaining due on account of principal or interest after the application of the proceeds of the tax, being not to exceed one-twentieth of one per cent. upon the assessed value of the taxable property for each year, the holders would be entitled to payment *out of the general fund of the county.* This view is clearly and ably expressed by Justice Strong in *Macon County v. Huidekoper,* 33 L. ed. (U. S.) 914 (134 U. S. 332). The first point in the syl-

34

labus in that case reads: "Under the Missouri law author-
izing a county to subscribe to stock of the Missouri &
Mississippi Railroad Company, and issue bonds therefor,
and levy a tax of one-twentieth of one per cent. to pay
same, after applying said tax to the payment of a judg-
ment on interest coupons of said bonds, the balance due
on such judgment is a liability of the county to be paid
out of its general funds." The second point in the sylla-
bus reads: "The statutes of the state having authorized
the county to levy another tax of one-half of one per cent.
for county purposes, the owner of the judgment may by
mandamus compel the county to levy the full amount of
said last-named tax, and apply it to the payment of the
said balance, due on said judgment *pro rata* with other
demands against the county." If we apply the doctrine
laid down in the last case above cited to the instant case, it
will be seen that the city is liable for the full amount
which it promised to pay, and that it has not satisfied the
debt by levying and collecting a seven-mill tax and ap-
plying the same on the debt, and that, if there is a sur-
plus at any time beyond the ten per cent. for current ex-
penses, it can be applied on the debt, and, if there is a
failure to levy the ten per cent. allowed under the law,
then that the city can be compelled to make such levy, and
that the surplus will be available to apply on the debt.

Under the oral stipulation and by reason of the judg-
ment rendered in the *Taylor Flick* case (57 Neb. 548) the
validity of the judgments was determined. Of this *Taylor
Flick* case Commissioner IRVINE, in delivering the opin-
ion of this court, says: "The petition did not state a
cause of action." He then sets out the contents of the
petition, being the ordinance in full, the alleged levy of
seven mills tax each year, and the statement that the
judgments, with accrued interest, amounted to $8,685.78,
all of which the plaintiffs then averred to be in excess of
the limit stipulated by said ordinance, and also in excess
of the amount that said city could lawfully contract to
pay for water service. The question was then discussed

in the opinion that the contention of the city and Taylor Flick was that the city could not lawfully contract to pay more than seven mills on the dollar each year. If that question was fairly submitted before the district court and was determined by it, and an appeal was taken to this court from the judgment of the district court and a new judgment announced, then that ought to forever settle it. The view of the district court is shown by the judgment rendered for the city, and the view of this court is shown by the fact that this court on appeal dismissed the action, and so decided against the city. The IRVINE opinion says that the sum realized by the levy of seven mills on the dollar proved insufficient to pay the company the stipulated rate per hydrant, and that by the year 1892 the deficit amounted to over $4,000, and that the city answered confessing its liability, and that judgment was entered against it, and that in 1893 and 1894, other deficiencies having arisen, judgments were again taken. The petition alleged that the said sum of $8,685.78 was in excess of the limit stipulated in the ordinance, and in excess of the amount that the city could lawfully contract to pay, and this contention was determined against the city of Broken Bow and against Taylor Flick by this court. The IRVINE opinion says: "It is the first time we have heard that one conceiving money to be justly due him is guilty of fraud or any other sin in seeking payment, or in threatening to resort to the remedy afforded by law for that purpose. There is no allegation that any facts were misrepresented, or that the company did other than to threaten suit to recover a demand it deemed just." This court determined that the injunction granted by the district court should not have been granted, that "the case is wholly without merit," and reversed the judgment of the district court. That judgment of this court still stands. This court is not at liberty to decide upon the present record concerning the merits of the controversy because of the fact that the former attack upon their validity and enforceability was decided adversely to the

city by this court, and the city by the judgment rendered at that time is forever barred. If the validity of t. three judgments sued on has become *res judicata,* it is idle to make any inquiry concerning the inherent validity or invalidity of the contract which went into these judgments; for, if the judgments have been declared valid by the action of this court, then the parties and the court are bound by the prior adjudication.

This action is to be regarded as one upon domestic judgments, or as an action to revive dormant judgments *Snell v. Rice,* 72 Neb. 571. The plaintiff owns these judgments; they have not been paid; on their face they are dormant. They ought to be revived.

It is the opinion of the writer that, where a case is tried in the district court upon pleadings which necessarily require a consideration of the issues and facts in dispute between the parties, and such issues and facts are determined by such court in favor of the plaintiff and its judgment is rendered concerning them in favor of the plaintiff, and thereafter on appeal the case is considered by this court, and the judgment of the district court is reversed and this court renders its judgment against the plaintiff and in favor of the defendant, a subsequent examination of the same issues and facts in a new case in the district court between the same parties will be considered barred, and the subject matter of the inquiry and the condition of the parties relating thereto will be regarded as *res judicata.*

SEDGWICK, J., dissenting.

The majority opinion refuses to determine the principal questions presented in the case, but leaves them "to be considered, should they ever subsequently arise, in an action under issues properly framed and which squarely present such questions." Thus, the door is opened and further litigation invited. It seems to me that the issues are "properly framed" and that the matters thus evaded are "squarely" presented. This is an action at law upon

domestic judgments, and the prayer of the petition is for a money judgment "of $6,482.38, together with interest as aforesaid, and costs of suit." There was no application to revive dormant judgments, and no conditional order of revivor. The answer is essentially an equitable defense. It sets up in detail all of the facts relied upon to defeat the collection of the judgments sued upon, with a prayer that the plaintiff be "enjoined from prosecuting his said action further, and from collecting or attempting to collect said judgments and each of them and the amounts alleged to be due (on) them, and that said judgments and each of them may be declared null and void and of no force and effect, and that it may be found and decreed that the defendant, the city of Broken Bow, is not liable to the plaintiff for said sums or for any sum whatsoever," and concludes with a prayer for general equitable relief. To this answer the plaintiff filed a reply. The reply consists of 24 sheets of closely typewritten matter, setting out all of the facts involved in the litigation and all of the equities of the parties. The case is, therefore, a general action in equity to determine and adjust the rights of the parties growing out of these complicated transactions, and the whole matter should be disposed of and the litigation ended.

I am not aware of any other form of action that this plaintiff could bring that would more properly or fairly present the questions that these parties have tried to present. If there can, under our practice, be an action more "properly framed" which would more "squarely present such questions," the majority opinion does not indicate what that action would be.

By the second paragraph of the syllabus it is declared that in an action upon domestic judgments the creditor may have both a new judgment and a revivor of the old, and yet in this case he is allowed only a revivor of the old judgments without regard to equitable defenses.

In statutory proceedings to revive a judgment, if it is conceded that the judgment was originally valid, the only

remaining question is whether since its rendition it has been satisfied. If, because of things that have been done or have occurred since the judgment was rendered, there is no longer any legal liability thereon, the judgment is satisfied and cannot be revived. If this was strictly the statutory proceeding to revive these judgments, the practice a hundred years ago might have been to formally revive the judgments and remit the parties to further litigation. Under the old practice in such cases, the defendant might bring his action on the equity side of the court and enjoin further proceedings at law to revive the judgment until the equities arising thereon after the judgment was rendered could be adjusted between the parties. It has always been considered idle to revive judgments upon which the law will not allow anything to be collected. Our code provides that a defendant may allege any defense that he has, whether legal or equitable, or both. It seems very strange, when an action is brought on a judgment for the sole purpose of determining how much there is due thereon, and equities are alleged in defense showing that a less amount is really due than the face of the judgment sued upon, to evade the issues so presented and tried in the lower court, and change the action into the statutory pro-ceeding to revive, and so avoid passing upon the issues properly presented. Time was when such practice was indulged in by some technical courts, but I supposed that time was long past, especially in this state. These issues cannot be satisfactorily tried in an action of mandamus to compel a levy to pay these judgments, unless the defendant is allowed to present the same equitable defenses that are presented here. Long after the courts had abandoned the old practice of refusing to consider equitable defenses in actions at law upon judgments, they still refused equitable defenses in actions of mandamus. To be consistent with the decision in this case, the majority must therefore refuse all equitable defenses if another action of that nature should be brought. It seems, therefore, impossible to foretell when and where the litigation is to end.

I think the whole matter should be disposed of now in this equitable proceeding where all of the matters in dis-pute are presented.

The concurring opinion attempts to discuss the merits of the case, but that discussion is unsatisfactory to my mind, and, of course, is useless in view of the decision of the majority of the court.

LETTON, J.

I concur in the opinion of Judge FAWCETT reviving the judgment so as to permit them to be used to reach the money in the hands of the city arising from the seven-mill levy, if the same is properly liable to be so applied, but express no opinion as to that issue.

I think Judge SEDGWICK is right in his dissenting opin-ion as to the desirability of ending the litigation, and be-lieve that no recovery can be had in excess of the annual seven-mill levy.